Michelle C. Yau (*Pro Hac Vice*)
Kai Richter (*Pro Hac Vice pending*)
Daniel R. Sutter (*Pro Hac Vice*)
Caroline Bressman  (*Pro Hac Vice*)
COHEN MILSTEIN SELLERS & TOLL PLLC
1100 New York Ave. NW ● Fifth Floor
Washington, DC 20005
Telephone: (202) 408-4600
Fax: (202) 408-4699

Peter K. Stris (Cal. Bar No. 216226)
Rachana A. Pathak (Cal. Bar No. 218521)
Victor O'Connell (Cal. Bar No. 288094)
John Stokes (Cal. Bar No. 310847)
Colleen R. Smith (*Pro Hac Vice*)
STRIS & MAHER LLP
777 S. Figueroa St. ● Suite 3850
Los Angeles, CA 90017
Telephone: (213) 995-6800
Fax: (213) 261-0299

Todd Jackson (Cal. Bar No. 202598)
Nina Wasow (Cal. Bar No. 242047)
FEINBERG, JACKSON, WORTHMAN &
WASOW, LLP
2030 Addison Street ● Suite 500
Berkeley, CA 94704
Telephone: (510) 269-7998
Fax: (510) 269-7994

Shaun P. Martin (Cal. Bar No. 158480)
5998 Alcala Park ● Warren Hall
San Diego, CA 92110
Telephone: (619) 260-2347
Fax: (619) 260-7933

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Timothy Scott, Patricia Gilchrist, Karen Fisher, Helen Maldonado-Valtierra, John Griffin, Kenneth Rhodes, Judy Dougherty, John Kelly, Richard Walshon, and Dan Koval, on behalf of themselves and all others similarly situated,<br><br>        Plaintiffs,<br><br>    v.<br><br>AT&T Inc., AT&T Services, Inc. and the AT&T Pension Benefit Plan,<br><br>        Defendants. | Case No. 3:20-cv-07094-JD<br><br>**STATEMENT OF RECENT DECISION**<br><br>Hon. James Donato |

As supplemental authority[1] in support of their Motion for Class Certification (Dkt No. 119), Plaintiffs respectfully submit the attached Report and Recommendation ("R&R") in *Kernan v. Metropolitan Life Ins. Co.*, No. 1:18-cv-11229 (S.D.N.Y. March 17, 2023). The R&R, issued last week, recommended granting class certification in another ERISA actuarial equivalence case.

In *Kernan*, plaintiffs filed suit under ERISA on behalf of a class of participants claiming that the Plan's use of outdated mortality tables resulted in underpayment of JSA benefits to participants in the Plan. *Id.* at 2. Defendants opposed certification "on grounds of standing and failure to meet Rule 23(a)'s commonality, typicality and adequacy requirements." *Id.* at 4. Defendants further opposed certification by contending that plaintiffs' expert, Ian Altman, was unreliable and employed a flawed methodology, supporting this claim with their own expert, Jack Abraham. *Id.* at 11-12. Mr. Altman (for Plaintiffs) and Mr. Abraham (for Defendants) are the same experts the parties submit here in connection with class certification.

In a lengthy opinion, the R&R in *Kernan* rejected the attacks on Mr. Altman and the arguments against certification and recommended certification of the class. *Id.* at 4-17.

Dated:  March 23, 2022

<div style="margin-left:40%">

Respectfully submitted,
/s/ *Colleen R. Smith*
Peter K. Stris (Cal. Bar No. 216226)
Rachana A. Pathak (Cal. Bar No. 218521)
Victor O'Connell (Cal. Bar No. 288094)
John Stokes (Cal. Bar No. 310847)
Colleen R. Smith (*pro hac vice*)
STRIS & MAHER LLP
777 S. Figueroa St. ● Suite 3850
Los Angeles, CA 90017
Telephone: (213) 995-6800
Fax: (213) 261-0299
pstris@stris.com
rpathak@stris.com
voconnell@stris.com
jstokes@stris.com
csmith@stris.com

</div>

---

[1] This Statement of Recent Decision is permitted by Local Rule 7-3(d)(2), which allows counsel, "without prior Court approval" to "bring to the Court's attention a relevant judicial opinion published after the date the opposition or reply was filed," but "[b]efore the noticed hearing date," "by filing and serving a Statement of Recent Decision."

Shaun P. Martin (Cal. Bar No. 158480)
5998 Alcala Park ● Warren Hall
San Diego, CA 92110
Telephone: (619) 260-2347
Fax: (619) 260-7933
smartin@sandiego.edu

Michelle C. Yau (admitted *pro hac vice*)
Kai Richter (*pro hac vice pending*)
Daniel J. Sutter (admitted *pro hac vice*)
Caroline Bressman  (*Pro Hac Vice*)
COHEN MILSTEIN SELLERS & TOLL PLLC
1100 New York Ave. NW ● Fifth Floor
Washington, DC 20005
Telephone: (202) 408-4600
Fax: (202) 408-4699
myau@cohenmilstein.com
krichter@cohenmilstein.com
dsutter@cohenmilstein.com
cbressman@cohemilstein.com

Todd Jackson (Cal. Bar No. 202598)
Nina Wasow (Cal. Bar No. 242047)
FEINBERG, JACKSON, WORTHMAN & WASOW, LLP
2030 Addison Street ● Suite 500
Berkeley, CA 94704
Telephone: (510) 269-7998
Fax: (510) 269-7994
todd@feinbergjackson.com
nina@feinbergjackson.com

***Attorneys for Plaintiffs***

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------x

LEE KERNAN, EMILY ROSS, and JOAN      :
BROWNELL, on behalf of themselves and all   :
others similarly situated,                :           18-CV-11229 (RA) (OTW)
                                          :
          Plaintiffs,                :         **REPORT & RECOMMENDATION TO**
                                          :         **THE HONORABLE RONNIE ABRAMS**
         -against-               :

METROPOLITAN LIFE INSURANCE COMPANY, :
THE METROPOLITAN LIFE INSURANCE     :
COMPANY EMPLOYEE BENEFITS COMMITTEE, :
AND JOHN/JANE DOES 1-20,           :
                                          :
         Defendants.             :
------------------------------------------------------------x

     **ONA T. WANG**, **United States Magistrate Judge**:

     Plaintiffs bring this action alleging individual and putative class claims concerning the

calculation of benefits they were offered under their retirement plan. As relevant here, Named

Plaintiffs Lee Kernan, Emily Ross, and Joan Brownell move for class certification. (*See* ECF 141).

The motion was referred to me on December 28, 2021, ECF 136, and the parties completed

their briefing in August 2022. For the reasons set forth below, I respectfully recommend that

Plaintiffs' motion be **GRANTED**.

**I.**     **BACKGROUND AND PROCEDURAL HISTORY**

    **A.**  **Factual Background**

     The detailed factual background of Plaintiffs' allegations is set forth in the Opinion and

Order denying Defendants' motion to dismiss and in Plaintiffs' Second Amended Complaint. *See*

*Masten v. Metro. Life Ins. Co.*, 543 F. Supp. 3d 25 (S.D.N.Y. 2021) ("*Masten*")[1]; (ECF 124, Plaintiffs' Second Amended Complaint ("SAC")). The Court assumes familiarity with that background and adopts and employs the defined terms that appear in *Masten* and the SAC.

Plaintiffs Catherine McAlister, Pauline Walker, Lee Kernan, Emily Ross, Scott Batey, Mary Trivett, and Joan Brownell are retirees of Defendant Metropolitan Life Insurance Company ("MetLife" or "Defendants") and are participants in the Metropolitan Life Retirement Plan (the "Plan"). *Masten*, 543 F. Supp. at 28; (SAC ¶¶ 13-19). Proposed Named Plaintiffs Kernan, Ross, and Brownell[2] bring this putative class action against Defendants asserting, *inter alia*, that the Plan's use of outdated mortality tables from 1971[3] violates the Employee Retirement Income Security Act of 1974 ("ERISA") and underpays their joint and survivor annuity ("JSA") benefits. Under ERISA, qualified JSAs (JSAs with survivor annuities between 50% and 100%) ("QJSAs") "must be at least as valuable as any other benefit <u>that the plan participant can select at the same time.</u> In other words, a QJSA should have a present value that is <u>at least as great as any other benefit that the plan participant could select when she begins collecting benefits.</u>" (SAC ¶ 3) (emphases added). The Plan's Traditional Part provided that participants accrued benefits as a 5-year certain-and-life annuity ("5YCLA") before July 1, 2008, and as a 12-year life and certain annuity ("12YCLA") after July 1, 2008. The QJSA benefits for these participants were calculated using 1971 mortality tables. (*See* SAC ¶¶ 43-45). Using an antiquated table generates

---

[1] Named plaintiff William Masten was voluntarily dismissed on October 21, 2021. (ECF 125).
[2] (*See* ECF 141, Memorandum of Law in Support of Plaintiffs' Motion for Class Certification ("Motion") at n. 4).
[3] Although the SAC alleges use of outdated 1983 mortality tables as well, these mortality tables were not used for the Traditional Part participants as the Proposed Class is now defined. (*See* SAC ¶¶ 71, 74, 82; Motion at 5).

lower present values of future payments, decreasing the monthly benefit under a JSA. (SAC ¶ 65).

The Court resolves factual disputes only to the extent necessary to determine the class certification issues. *See In re Initial Pub. Offerings ("IPO") Sec. Litig.*, 471 F.3d 24, 27, 41–42 (2d Cir. 2006) (explaining that, when deciding motion for class certification, district court must assess the evidence and "resolve factual disputes" relevant to the motion); *see also Sykes v. Mel Harris & Assocs., LLC*, 285 F.R.D. 279, 283 (S.D.N.Y. 2012) ("*Sykes I*") (same), *aff'd sub nom.*, *Sykes v. Mel S. Harris & Assocs., LLC*, 780 F.3d 70 (2d Cir. 2015) ("*Sykes II*").

**B. Class Discovery and the Proposed Class**

After Judge Abrams denied Defendants' motion to dismiss, Plaintiffs filed the SAC and the parties engaged in expert class discovery and filed competing expert reports.[4] (*See* ECF 119). In the course of that discovery and briefing of the instant motion, Plaintiffs narrowed the Proposed Class to consist of all participants and their beneficiaries who began receiving pension benefits:

1) On or after January 1, 2013;
2) In the form of a JSA with a survivorship percentage between 50% and 100%;
3) Whose benefit was calculated entirely using the Traditional Part's formula; and
4) Not calculated under Section 4.02-A or 5.02-A of the Plan as of June 30, 2008.

(*See* ECF 155, Plaintiffs' Reply to Defendants' Opposition to Motion for Class Certification ("Reply") at 9).

---

[4] Because the parties have not contested the admissibility of the expert opinions at this time, I have not determined (nor do I have the authority to determine) the admissibility of the competing expert opinions. However, I have considered the expert reports in this case in accordance with *In re LIBOR-Based Financial Instruments Antitrust Litigation*, 299 F. Supp. 3d 430, 471 (S.D.N.Y. 2018).

As discussed below, Plaintiffs also propose creating two subclasses, one of which includes participants who signed released upon their separation from MetLife, and one which did not. Plaintiffs Brownell and Ross are Named Plaintiffs who would represent the subclass of Plan participants who signed releases, and Plaintiff Kernan would represent that subclass of Plan participants who did not. The remaining claims would be pursued by the Plaintiffs on an individual basis. (Reply at 8).

Defendants challenge class certification on grounds of standing and failure to meet Rule 23(a)'s commonality, typicality and adequacy requirements. Defendants also challenge Plaintiffs' ability to meet the requirements of Rule 23(b) for essentially the same reasons that they claim that Plaintiffs have not satisfied the Rule 23(a) requirements. For the reasons discussed below, I respectfully recommend that class certification be **GRANTED** with the creation of two subclasses as proposed by Plaintiffs.

## II.  LEGAL STANDARDS

### A.  Standing

To establish standing under Article III of the Constitution, a plaintiff must show "(1) that he or she suffered an injury in fact that is concrete, particularized, and actual or imminent, (2) that the injury was caused by the defendant, and (3) that the injury would likely be redressed by the requested judicial relief." *Thole v. U.S. Bank N.A.*, 140 S. Ct. 1615, 1618 (2020) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)). A plaintiff must have a "personal stake" in the case in order to have standing. *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2203 (2021). "At the class certification stage, the Second Circuit has approved of evaluating standing by relying on the pleadings and 'constru[ing] the complaint in favor of the complaining party.'"

4

*Leber v. Citigroup 401(k) Plan Investment Committee*, 323 F.R.D. 145, 154 ("*Leber IV*") (quoting

*Denney v. Deutsche Bank AG*, 443 F.3d 253, 263 (2d Cir. 2006)). In an ERISA class action, "only

one of the named Plaintiffs ... is required to establish standing in order to seek relief on behalf

of the entire class."[5] *Jacobs v. Verizon Commc'ns Inc.*, No. 16-CV-01082 (PGG) (RWL), 2020 WL

4601243, at *6 (S.D.N.Y. June 1, 2020), *report and recommendation adopted*, No. 16-CV-1082

(PGG), 2020 WL 5796165 (S.D.N.Y. Sept. 29, 2020) (internal citations and quotations omitted);

*see also Kendall v. Emps. Ret. Plan of Avon Prod.*, 561 F.3d 112, 118 (2d Cir. 2009) ("In a class

action, once standing is established for a named plaintiff, standing is established for the entire

class"). Moreover, an injury for the purposes of establishing standing need not be sufficient to

support a claim for damages. *See Denney*, 443 F.3d at 265.

### B. Class Certification and the Requirements of Rule 23

A court may certify a class action only if it determines that a class satisfies the four

prerequisites of Rule 23(a): (1) the class is so numerous that joinder of all members is

impracticable; (2) there are questions of law or fact common to the class; (3) the claims or

defenses of the representative parties are typical of the claims or defenses of the class; and (4)

the representative parties will fairly and adequately protect the interests of the class. Fed. R.

Civ. P. 23(a). "Rule 23(a) ensures that the named plaintiffs are appropriate representatives of

the class whose claims they wish to litigate." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349

(2011). The four requirements "effectively limit the class claims to those fairly encompassed by

---

[5] The Supreme Court's holding in *TransUnion* does not compel a different result. *TransUnion*, 141 S. Ct. at 2200.
The Supreme Court in that case specifically declined to "address the distinct question whether every class member
must demonstrate standing before a court certifies a class." *Id.* at 2208 n.4.

the named plaintiff's claims." *Id.* (internal quotation marks omitted). The party seeking class certification must establish by a preponderance of the evidence that each of Rule 23's requirements is met. *In re Vivendi, S.A. Sec. Litig.*, 838 F.3d 223, 264 (2d Cir. 2016).

A party seeking class certification must affirmatively demonstrate compliance with Rule 23. *Wal-Mart*, 564 U.S. at 350. In other words, the Rule "does not set forth a mere pleading standard." *Id.* A district court must undertake a "rigorous analysis" in order to determine whether the requirements have been met. *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013); *see also Douglin v. GreatBanc Tr. Co.*, 115 F. Supp. 3d 404, 409 (S.D.N.Y. 2015). When considering a motion for class certification, the court must accept the allegations in the complaint as true, *Meyer v. United States Tennis Ass'n*, 297 F.R.D. 75, 82 (S.D.N.Y. 2013), and "should not assess any aspect of the merits unrelated to a Rule 23 requirement." *Shahriar v. Smith & Wollensky Rest. Grp., Inc.*, 659 F.3d 234, 251 (2d Cir. 2011) (quoting *In re Initial Pub. Offerings Sec. Litig.*, 471 F.3d 24, 41 (2d Cir. 2006)). However, the court's analysis will inevitably "entail some overlap with the merits of the plaintiff's underlying claim." *Wal-Mart*, 564 U.S. at 351. On a Rule 23 motion, "the ultimate question is not whether the plaintiffs have stated a cause of action or will prevail on the merits but rather whether they have met the requirements of Rule 23." *Gortat v. Capala Bros.*, 257 F.R.D. 353, 362 (E.D.N.Y. 2009). Although the Court must resolve factual disputes relevant to satisfying each Rule 23 requirement, "any factual determinations made at the certification stage are not binding on a subsequent fact-finder, even the certifying court." *Flores v. Anjost Corp.*, 284 F.R.D. 112, 122 (S.D.N.Y. 2012) (citing *In re Initial Pub. Offerings Sec. Litig.*, 471 F.3d at 41).

1.      Rule 23(a) Requirements

    a)      *Numerosity*

In the Second Circuit, "numerosity is presumed where a putative class has forty or more members." *Shahriar*, 659 F.3d at 352; *see also Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995). Defendants do not appear to contest numerosity, whether or not the class includes the plaintiffs who signed releases. Accordingly, numerosity is satisfied. *See Moreno v. Deutsche Bank Americas Holding Corp.*, No. 15-CV-9936 (LGS), 2017 WL 3868803, at *4 (S.D.N.Y. Sept. 5, 2017) (numerosity requirement met in derivative ERISA suit where the plan had 22,000 participants and 10,000 former participants); *Beach v. JPMorgan Chase Bank, Nat'l Ass'n*, No. 17-CV-563 (JMF), 2019 WL 2428631, at *6 (S.D.N.Y. June 11, 2019).

    b)      *Commonality*

"Commonality is satisfied where 'there are questions of law or fact common to the class.'" *Moreno*, 2017 WL 3868803, at *4 (quoting Fed. R. Civ. P. 23(a)(2)). "A question of law or fact is common to the class if the question is 'capable of classwide resolution—which means that its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.'" *Id.* (quoting *Johnson v. Nextel Comms. Inc.*, 780 F.3d 128, 137 (2d Cir. 2015)); *see also Wal-Mart*, 564 U.S. at 349–50. "Where the same conduct or practice by the same defendant gives rise to the same kind of claims from all class members, there is a common question." *Nextel Comms.*, 780 F.3d at 137 (internal citations and quotations omitted). "Typically, the question of defendants' liability for ERISA violations is common to all class members because a breach of fiduciary duty affects all participants and beneficiaries." *In re J.P. Morgan Stable Value Fund ERISA Litig.*, No. 12-CV-2548 (VSB), 2017 WL 1273963, at *7 (S.D.N.Y.

Mar. 31, 2017) (internal quotation marks omitted). Plaintiffs have identified common questions of law and fact; Defendants dispute commonality, relying on their expert report and its calculations.

                *c)*     *Typicality*

Rule 23(a)(3) requires a plaintiff to establish that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "Like commonality, the typicality requirement in Rule 23(a)(3) serves as a 'guidepost[ ] for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence.'" *Leber IV*, 323 F.R.D. at 162 (quoting *Wal-Mart*, 564 U.S. at 349 n.5). Therefore, the party seeking certification must establish that each class member's claims "arise[ ] from the same course of events and each class member makes similar arguments to prove the defendant's liability." *Id.* (quoting *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 574 F.3d 29, 35 (2d Cir. 2009)); *accord Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 504 F.3d 229, 245 (2d Cir. 2007).

Furthermore, the operative "disputed issues of law or fact [must] occupy essentially the same degree of centrality to the named plaintiff's claim as to that of other members of the proposed class." *Mazzei v. Money Store*, 829 F.3d 260, 272 (2d Cir. 2016) (alterations and quotation marks omitted). Accordingly, when named plaintiffs allege that "the same unlawful conduct was directed at or affected" both the plaintiff and the larger class, "the typicality requirement is usually met irrespective of minor variations in the fact patterns underlying

8

individual claims." *Robidoux v. Celani*, 987 F.2d 931, 936–37 (2d Cir. 1993); *see also Balverde v. Lunella Ristorante, Inc.*, No. 15-CV-5518 (ER), 2017 WL 1954934, at *7 (S.D.N.Y. May 10, 2017). Defendants dispute typicality as well, again relying on the calculations and methodology in their expert report.

> d) *Adequacy*

Under Rule 23(a)(4), "[a]dequacy is twofold: the proposed class representative must have an interest in vigorously pursuing the claims of the class, and must have no interests antagonistic to the interests of other class members." *Denney*, 443 F.3d at 268; *see also Robinson v. Metro–North Commuter R.R. Co.*, 267 F.3d 147, 170 (2d Cir. 2001); *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 827 F.3d 223, 231 (2d Cir. 2016). Rule 23(a)(4) "raises concerns about the competency of class counsel and conflicts of interest." *Wal-Mart*, 564 U.S. at 345, 349 n.5 (citing Fed. R. Civ. P. 23(a)(4)). In assessing the adequacy of counsel, courts must consider whether "plaintiff's attorneys are qualified, experienced and able to conduct the litigation." *Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 60 (2d Cir. 2000); *accord Caufield v. Colgate-Palmolive Co.*, No. 16-CV-4170 (LGS) (KNF), 2017 WL 3206339, at *5 (S.D.N.Y. July 27, 2017). Defendants challenge whether Plaintiffs have met their evidentiary burden to show adequacy of the named Plaintiffs, but do not apparently challenge adequacy of counsel.

> 2.  Rule 23(b) Requirements

The Proposed Class must also satisfy at least one of the three requirements listed in Rule 23(b). *See In re U.S. Foodservice Inc. Pricing Litig.*, 729 F.3d 108, 117 (2d Cir. 2013). Here, Plaintiffs assert that they have satisfied all three requirements under Rule 23(b)(1) (*see* Motion

at 12); relying on their expert report, Defendants assert that Plaintiffs have not satisfied any

requirements under Rule 23(b). (*See* ECF 150, Defendant's Memorandum of Law in Opposition

to Plaintiffs' Motion for Class Certification ("Opposition") at 27).

"Rule 23(b)(1) applies ... where individual adjudications 'as a practical matter, would be

dispositive of the interests of the other members not parties to the individual adjudications or

would substantially impair or impede their ability to protect their interests.'" *Wal-Mart*, 564

U.S. at 361 n.11 (quoting Rule 23(b)(1)(B)). Rule 23(b)(1) permits class certification if:

> prosecuting separate actions by individual class members would create a risk of:
> (A) inconsistent or varying adjudications with respect to individual class members
> that would establish incompatible standards of conduct for the party opposing the
> class; or (B) adjudications with respect to individual class members that, as a
> practical matter, would be dispositive of the interests of the other members not
> parties to the individual adjudications or would substantially impair or impede
> their ability to protect their interests.

Fed. R. Civ. P. 23(b)(1).

Under Rule 23(b)(2), a class action may be maintained if "final injunctive relief or

corresponding declaratory relief is appropriate respecting the class as a whole." *Id.* "Rule

23(b)(2) applies only when a single injunction or declaratory judgment would provide relief to

each member of the class." *Wal-Mart*, 564 U.S. at 360.

Under Rule 23(b)(3), a claim for damages may proceed as a class if "questions of law or

fact common to class members predominate over any questions affecting only individual

members, and ... a class action is superior to other available methods for fairly and efficiently

adjudicating the controversy." *In re Nassau Cty. Strip Search Cases,* 461 F.3d 219, 225 (2d Cir.

2006) (internal quotation marks and citation omitted). "As a general matter, the Rule 23(b)(3)

predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Id.*

Rule 23(b)(3) imposes a "far more demanding" inquiry into the common issues that serve as the basis for class certification. *Sykes II,* 780 F.3d at 81. Nonetheless, "individual questions need not be absent. The text of Rule 23(b)(3) itself contemplates that such individual questions will be present. The rule requires only that those questions not predominate over the common questions affecting the class as a whole." *Id.* at 81 (internal citations and quotations omitted). "Common issues may predominate when liability can be determined on a class-wide basis, even when there are some individualized damage issues." *In re Visa Check/MasterMoney Antitrust Litig.,* 280 F.3d 124, 139 (2d Cir. 2001); *Merryman v. Citigroup, Inc.*, 15-CV-9185 (CM), 2018 WL 1621495 at *12 (S.D.N.Y. 2018).

## III.   **DISCUSSION**

Apart from numerosity, Defendants vigorously dispute whether Plaintiffs have standing and whether they have satisfied the remaining elements of Rule 23(a) and Rule 23(b). (*See* Opposition at 21, 27). Defendants raise two main arguments to challenge standing and class certification: **first**, that 464 of the 1,823 putative class members signed releases releasing the class claims in connection with the termination of their employment, and **second**, that Plaintiffs' expert's calculations and assumptions were applied incorrectly,[6] such that some

---

[6] Defendants take issue with several assumptions made in the expert report of Ian H. Altman, Plaintiffs' expert actuary (ECF 142, Declaration of Douglas P. Needham, Ex. 2 ("Altman Report")). (Opposition at 2). For example, Defendants' rebuttal expert, Jack Abraham, first states that the "comparator" should be the Plan's default benefit, which MetLife "generously" provided as a certain & life annuity ("CLA") to "most of the purported class members", which was more than the present value of a single life annuity ("SLA") at all times. (ECF 151, Declaration of Russell

plaintiffs did not suffer an injury. This lack of financial injury, according to Defendants, means that the Proposed Class cannot meet their evidentiary burden to satisfy Rule 23(a)'s commonality, typicality, and adequacy requirements and any requirement under Rule 23(b). As discussed below, Defendants' arguments are insufficient to defeat class certification.

### 1. The Releases

The releases at issue were executed by 464 individuals (including Named Plaintiffs Ross and Brownell) upon their separation from MetLife (collectively, the "Release Plaintiffs"). The parties disagree whether the releases, which contain virtually identical language carving out "any rights or benefits that vested . . . prior to your execution of this Agreement under any employee benefit plans governed by ERISA" would cover the claims here. (*See* Reply at 3). Defendants argue that Ross and Brownell have no standing to pursue claims on behalf of the class, and that even if they did, the fact that the releases were not executed by all plaintiffs at the same time, under the same circumstances, would defeat Rule 23(a)'s typicality, commonality and adequacy requirements,[7] by requiring a "fact specific inquiry" into the applicability of each of the releases and whether each Release Plaintiff intended to release the class claims at the time they separated from MetLife. (*See* Opposition at 19-20).

---

L. Hirschhorn, Ex. A ("Abraham Report") ¶ 25). Abraham reports that the higher value of the CLA is because "the CLA may provide benefits at certain times when the SLA would not provide such benefits." (*Id.* ¶ 17). Abraham then applies Altman's assumptions "consistently" by applying more current mortality tables to calculate both the JSA to be offered (as Altman did) as well as calculating a new conversion factor to arrive at a new comparator SLA. Doing so for Plaintiff Ross, as an example, results in a lower conversion factor than the one actually applied by the Plan to calculate the SLA, which in turn results in a lower "actuarially equivalent" JSA benefit. (*See id.*, ¶ 58). Plaintiffs assert that the correct "comparator" SLA to be used in assessing a violation of ERISA 502(d) should be the one actually calculated by the Plan, and that updated mortality tables should be applied only to the conversion factor and calculation of the JSA benefit to determine whether that JSA is actuarially equivalent as required be ERISA. (*See id.*, Table VI).

[7] Defendants make the somewhat illogical argument that Ross and Brownell have no standing because of their releases, while Kernan would be an inadequate class representative for the Release Plaintiffs because she did not sign a release. (*See* Opposition at 20.)

There is no need to interpret the release language at this time, however, since even if the Court were to find that the release covers the class claims,[8] the only effect of that finding would be to reduce the size of the class by a maximum of 464 individuals. In any event, to avoid reaching a potential merits question prematurely, Plaintiffs suggest that the Court could simply certify two sub-classes: one which separated from MetLife with a release, and one which did not, until a later decision on the effect of the language in the releases. (Reply at 9); *see Sykes II*, 780 F.3d at 81 ("The district court's order [on class certification] is not a final statement of the merits."

2.   <u>Measure of injury using "Altman's proposed assumptions"</u>

After class discovery, Plaintiffs have narrowed the definition of the putative class of 1,823 members to be:

1) On or after January 1, 2013;
2) In the form of a JSA with a survivorship percentage between 50% and 100%;
3) Whose benefit was calculated entirely using the Traditional Part's formula; and
4) Not calculated under Section 4.02-A or 5.02-A of the Plan as of June 30, 2008.

(Motion at 4).

Plaintiffs additionally state that the Class should be divided into two subclasses based on whether the employee signed a release upon their separation from MetLife. (Reply at 9).

---

[8] Although not necessary to this Report and Recommendation, it seems unlikely that a release signed by employees upon their termination and <u>years</u> before their election of retirement benefits could prevent those employees from ever litigating any future claims about their election of retirement benefits or the appropriate calculation of those benefits. Such a draconian result would allow employers to routinely avoid the requirements of ERISA that are at issue in this very case. *See Masten,* 543 F. Supp. at 29 (stating that the "policy" of ERISA "is to protect the interests of participants in employee benefit plans and their beneficiaries . . . by establishing standards of conduct, responsibility and obligation for fiduciaries of employee benefit plans, and by providing for appropriate remedies, sanctions and ready access to the Federal courts").

In support of the commonality requirement, Plaintiffs identify several common legal and factual issues, including:

(i)     which actuarial assumptions should be used to determine whether JSA benefits are actuarially equivalent to the SLA offered to participants when they started receiving benefits;

(ii)    whether the conversion factors generated by the Plan's terms improperly reduce the JSA benefits received by the putative class members; and

(iii)   Whether ERISA requires that QJSAs and QOSAs benefits be "actuarially equivalent" to the SLAs offered to participants when they start receiving benefits, and other legal questions related thereto;

(Motion at 7-8).

Defendants contend, however, that Altman's calculations and assumptions are incorrect, and that there are "hundreds of participants within the putative class – including Plaintiffs Ross and Brownell – who are not receiving lower benefits as a result of the Plan's current assumptions." (Opposition at 21).

Defendants' response boils down to a dispute about comparators and methodology for determining "actuarial equivalence." Specifically, Defendants recalculated the SLA using a methodology that was not supported by the Plan, and then used <u>that</u> SLA amount – rather than what the SLA actually offered – to suggest that the JSA and SLA amounts offered to Plan participants were actuarially equivalent. (*See* Abraham Report, and n. 6, *infra*). This argument appears to be based, in part, on an allegation that if Plaintiffs assert that MetLife was using outdated mortality tables to calculate the JSA amounts, then the comparator SLA should also be recalculated to use more current life expectancies. In short, MetLife ought to get the benefit of "over-paying" on Plaintiffs' SLAs. (*See* Abraham Report ¶¶ 44-58; Opposition at 2); *Masten*, 534 F. Supp. at 33 (addressing Defendants' argument that "conversion is properly assessed against the default benefit," and finding that proper comparator was SLA). Although this

argument – that a lowered tide lowers all boats – carries some appeal, it does not reflect the reality of these Plaintiffs, whose JSA benefits were calculated based on a higher SLA benefit and a lower conversion factor.[9] In any event, the delta – however it is calculated and whether the proper comparator is an SLA or the Plan's "default benefit"[10] – is a matter of damages calculation and resolution of the common factual and legal questions, and not class certification.

This dispute -- about the proper comparisons, calculations, and assumptions for calculating whether the options provided to the Proposed Class complied with ERISA -- goes to the heart of the merits of this case. It is neither necessary nor appropriate at this point for Plaintiffs to prove that each and every class member suffered damage under Defendants' methodology in order to meet the requirements for standing and class certification. Plaintiffs have carried their burden because they have shown that under <u>Plaintiffs'</u> methodology, the named Plaintiffs have shown some injury in fact and that the JSA choice(s) available to the Proposed Class were not actuarially equivalent to the SLA they had as a comparator at the time that they elected their benefits.

Plaintiffs have sufficiently identified (and this briefing has laid bare) the common questions of law and fact. Typicality is satisfied because the claims arise from the same course of events: the calculation and presentation of the value of the options available to members of

---

[9] *See also Sacerdote v. NYU*, No. 16-CV-6284 (KBF), 2018 WL 840364, at *7 (S.D.N.Y. Feb. 13, 2018) (finding that "alleged foregone opportunities" and alleged "reduction in choice" was a sufficient injury for standing in ERISA class action).

[10] Indeed, Judge Abrams considered this argument when denying Defendants' motion to dismiss. *Masten*, 543 F. Supp. at 33 ("Moreover, the Court finds that this factual dispute is immaterial to Plaintiff's claim under ERISA Section 205. ERISA requires that any 'qualified joint and survivor annuity' and 'qualified option survivor annuity' be the 'actuarial equivalent of a single annuity for the life of the participant,' [*i.e.*, SLA] not the plan's default retirement benefit").

the Proposed Class, and whether those options complied with ERISA § 502. Adequacy is also

satisfied where Plaintiffs have shown that they all have an interest in vigorously pursuing the

claims of the class as they are calculated by Plaintiffs' expert. *Denney*, 443 F.3d at 268.

Rule 23(b) is similarly satisfied. Defendants' only arguments regarding Rule 23(b)

depend again on the Court accepting Defendants' proposed methodology entirely, prematurely

ruling on the merits, and effectively implementing a form of injunctive relief potentially broader

than that sought by Plaintiffs. Individual adjudications here run the risk of different

methodologies and comparators used to determine whether the Plan procedure complied with

ERISA. As Judge Schofield noted:

> "The language of subdivision (b)(1)(A), addressing the risk of 'inconsistent
> adjudications,' speaks directly to ERISA suits, because the defendants have a
> statutory obligation, as well as a fiduciary responsibility, to 'treat the members
> of the class alike.'" *In re Citigroup Pension Plan ERISA Litig.*, 241 F.R.D. 172, 179
> (S.D.N.Y. 2006) (quoting *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 614
> (1997)). If two courts came to different conclusions as to how the proposed
> class members' [retirement] benefits must be calculated, Defendants would
> face a conflict between treating Plan participants alike and complying with each
> separate court order."

*Caufield*, 2017 WL 3206339 at *6 (certifying class under Rule 23(b)(1)(A)).

Although not necessary to this Report and Recommendation, I agree with Plaintiffs'

reasoning and find that they have also satisfied Rule 23(b)(2) and (3). (*See* Reply at 18-20).

Accordingly, Plaintiffs have sufficiently established class standing at this stage in the litigation.

IV.    CONCLUSION AND OBJECTIONS

For the reasons set forth above, I respectfully recommend that Plaintiffs' Motion for

Class Certification be **GRANTED** as follows:

> 1) On or after January 1, 2013;
> 2) In the form of a JSA with a survivorship percentage between 50% and 100%;
> 3) Whose benefit was calculated entirely using the Traditional Part's formula; and
> 4) Not calculated under Section 4.02-A or 5.02-A of the Plan as of June 30, 2008.

The Class should be divided into two subclasses based on whether the employee signed

a release upon their separation from MetLife.

In accordance with 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have

fourteen (14) days (including weekends and holidays) from receipt of this Report to file written

objections. *See also* Fed. R. Civ. P. 6 (allowing three (3) additional days for service by mail). A

party may respond to any objections within fourteen (14) days after being served. Such

objections, and any responses to objections, shall be addressed to the Hon. Ronnie Abrams.

Any requests for an extension of time for filing objections must be directed to Judge Abrams.

**FAILURE TO FILE OBJECTIONS WITHIN FOURTEEN (14) DAYS <u>WILL</u> RESULT IN A WAIVER**

**OF OBJECTIONS AND <u>WILL</u> PRECLUDE APPELLATE REVIEW.** *See Thomas v. Arn*, 474 U.S. 140,

155 (1985); *IUE AFL-CIO Pension Fund v. Herrmann*, 9 F.3d 1049, 1054 (2d Cir. 1993); *Frank v.*

*Johnson*, 968 F.2d 298, 300 (2d Cir. 1992); *Wesolek v. Canadair Ltd.*, 838 F.2d 55, 58 (2d Cir.

1988); *McCarthy v. Manson*, 714 F.2d 234, 237-38 (2d Cir. 1983).

**SO ORDERED.**


_____/ Ona T. Wang_____

Dated: March 17, 2023                                  **Ona T. Wang**
       New York, New York                         United States Magistrate Judge