Michelle C. Yau (*Pro Hac Vice*)
Kai Richter (*Pro Hac Vice*)
Daniel R. Sutter (*Pro Hac Vice*)
Caroline E. Bressman (*Pro Hac Vice*)
COHEN MILSTEIN SELLERS & TOLL PLLC
1100 New York Ave. NW ● Fifth Floor
Washington, DC 20005
Telephone: (202) 408-4600
Fax: (202) 408-4699

Peter K. Stris (Cal. Bar No. 216226)
Rachana A. Pathak (Cal. Bar No. 218521)
Victor O'Connell (Cal. Bar No. 288094)
John Stokes (Cal. Bar No. 310847)
STRIS & MAHER LLP
777 S. Figueroa St. ● Suite 3850
Los Angeles, CA 90017
Telephone: (213) 995-6800
Fax: (213) 261-0299

Todd Jackson (Cal. Bar No. 202598)
Nina Wasow (Cal. Bar No. 242047)
FEINBERG, JACKSON, WORTHMAN &
WASOW, LLP
2030 Addison Street ● Suite 500
Berkeley, CA 94704
Telephone: (510) 269-7998
Fax: (510) 269-7994

Shaun P. Martin (Cal. Bar No. 158480)
University of San Diego Law School
5998 Alcala Park ● Warren Hall
San Diego, CA 92110
Telephone: (619) 260-2347
Fax: (619) 260-7933

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Timothy Scott, Patricia Gilchrist, Karen Fisher, Helen Maldonado-Valtierra, John Griffin, Kenneth Rhodes, Judy Dougherty, John Kelly, Richard Walshon, Dan Koval, Jennifer Fryer, and Vince Carabba on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>AT&T Inc., AT&T Services, Inc. and the AT&T Pension Benefit Plan,<br><br>Defendants. | **THIRD AMENDED CLASS ACTION COMPLAINT**<br><br><br>Case No. 3:20-cv-07094-JD |

Plaintiffs Timothy Scott, Patricia Gilchrist, Karen Fisher, Helen Maldonado-Valtierra, Judy Duff, John Griffin, Kenneth Rhodes, Judy Dougherty, John Kelly, Richard Walshon, Dan Koval, Jennifer Fryer, and Vince Carabba by and through their attorneys, on behalf of themselves and all others similarly situated, allege the following:

# I.  NATURE OF THE ACTION

1.     This is a civil enforcement action brought under sections 502(a)(2) and 502(a)(3) of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1132(a)(2) and (a)(3), concerning Defendants' violations of ERISA's actuarial equivalence, anti-forfeiture, and joint and survivor annuity requirements with respect to the AT&T Pension Benefit Plan (the "AT&T Plan" or the "Plan").

2.     Plaintiffs and the Classes are vested participants in the AT&T Plan, which denies them their full ERISA-protected vested pension benefits. Specifically, Plaintiffs and the Classes are deprived of their vested accrued benefits if they receive pension benefits in the form of a Joint and Survivor Annuity. This is because the Plan's terms reduce these alternative forms of benefits using "Joint and Survivor Annuity Factors" which result in Plan participants receiving less than the actuarial equivalent of their vested accrued benefit, contrary to ERISA.

3.     A participant's pension benefit is generally expressed as a single life annuity because it pays a monthly benefit to the participant for her entire life (i.e., from the time she retires until her death).[1]

4.     In addition, ERISA-protected pension plans must offer married participants the option of receiving a payment stream for their life and their spouse's life after the retiree dies; this is a "joint and survivor annuity." ERISA § 205(a)-(d), 29 U.S.C. § 1055(a)-(d). The joint annuity is expressed as a percentage of the benefit paid during the retiree's life. For married participants, the joint and survivor annuity is the default form of pension payment unless the spouse consents to the participant receiving a single life annuity.

5.     Relevant here, the Plan's Joint and Survivor Annuity Factors reduce benefits for Plaintiffs and the Classes to less than the actuarial equivalent amount of a participant's benefit expressed as a single life annuity at the age of retirement. In other words, married participants receiving a Joint and Survivor annuity get less than a participant receiving a Single Life Annuity. For example, if a participant's single life annuity benefit is $10,000 per month at retirement at age

---

[1] An annuity provides retirement benefits paid every month from the time the participant retires until she dies.

65, and she is married, her default form of benefit is a 50% Joint and Survivor Annuity, which is reduced by a factor of 0.90 for most programs under the Plan. As a result, the participant's monthly benefit is 90% of $10,000 per month, or $9,000 per month. ERISA prohibits this level of reduction because the actuarial equivalent benefit she is entitled to receive under ERISA is approximately $9,200 per month if her spouse is the same age (65) when the participant retires.

6.    The Plan maintains the Joint and Survivor Annuity Factors (set forth below in Table 1) that reduce benefits to less than the actuarial equivalent of the participant's Single Life Annuity benefit, even though the applicable Treasury regulations require that "[a] qualified joint and survivor annuity must be at least the actuarial equivalent of the [single life annuity]. Equivalence may be determined, on the basis of consistently applied reasonable actuarial factors[.]" 26 CFR § 1.401(a)-11(b)(2).

7.    Actuarial equivalence is a computation that is designed to ensure that, all else being equal, all forms of benefit payments have the same economic value as each other.

8.    Generally, an actuarial equivalence computation considers both an interest rate and the expected longevity of a participant. The interest rate discounts the value of future pension payments to reflect the time value of money, while the mortality table provides the expected likelihood of that future payment being paid to the participant or her survivor based on published tables showing the statistical life expectancy of a person at a given age.

9.    This case concerns the Joint and Survivor Annuity Factors used by the AT&T Plan, which improperly reduce pension benefits owed to Plaintiffs and the Classes in violation of ERISA's actuarial equivalence requirements and regulations.

10.    Under ERISA, the joint and survivor annuities paid must be "the actuarial equivalent of a single annuity for the life of the participant." ERISA §§ 205(d)(1)(B), (d)(2)(A)(ii), 29 U.S.C. §§ 1055(d)(1)(B), (d)(2)(A)(ii). This means that other annuity forms must have the same economic value as the single life annuity.

11.    ERISA also requires that, if an employee's accrued benefit is to be determined as an amount other than an annual benefit commencing at normal retirement age [of 65] . . . the

employee's accrued benefit . . . shall be the actuarial equivalent of such benefit[.]" ERISA § 204(c)(3), 29 U.S.C. § 1054(c)(3).

12.    In addition, ERISA § 203(a), 29 U.S.C. § 1053(a), provides that an employee's right to her vested retirement benefits is non-forfeitable and states that paying a participant less than the actuarial equivalent value of her accrued benefit results in an illegal forfeiture of vested benefits. Thus, the Plan terms that reduce participant benefits to less than their actuarially equivalent value violate the anti-forfeiture requirement set forth in ERISA § 203(a), 29 U.S.C. § 1053(a).

13.    In sum, ERISA contains many statutory requirements that mandate that joint and survivor annuities paid to married retirees must be actuarially equivalent to the single life annuity available to them at a particular retirement age. In violation of ERISA, the Joint and Survivor Annuity Factors set forth in the AT&T Plan reduce benefits for Plaintiffs and the Classes below their actuarial equivalent value.

14.    Specifically, the Plan provides participants Joint and Survivor Annuities that are worth less than their Single Life Annuity at retirement. This violates: (i) the joint and survivor annuity rules  at  ERISA § 205(a)-(d), 29 U.S.C. § 1055(a)-(d); (ii) the actuarial equivalence requirement at ERISA § 204(c)(3), 29 U.S.C. § 1054(c)(3); and (iii) the anti-forfeiture requirements set forth in ERISA § 203(a), 29 U.S.C. § 1053(a).

15.    To the best of Plaintiffs' knowledge based on the available information, the Joint and Survivor Annuity Factors in the AT&T Plan generally applicable to the Classes have not been updated in over a decade—and in some cases reflect assumptions 50 years out of date—despite dramatic increases in longevity amongst the American public. Because the Joint and Survivor Annuity Factors have not been updated to be in line with reasonable actuarial assumptions, they do not yield actuarially equivalent payments to Class members as required by ERISA. As a result, Defendants have improperly reduced Class members' vested pension benefits in violation of ERISA §§ 203(a), 204(c)(3), 205(d)(1)(B),  and 205(d)(2)(A)(ii), 29 U.S.C. §§ 1053(a), 1054(c)(3), and 1055(d)(1)(B), and 1055(d)(2)(A)(ii)).

16.    When retiring or deciding whether to retire, Plan participants like Plaintiffs rely on information about their retirement options under the Plan provided by Defendants. Defendants

incorporate the Joint and Survivor Annuity Factors into such disclosures, leading Plan participants to believe that they are receiving benefits that are as valuable as the law requires, when in fact those benefits are less valuable than what ERISA provides. Similarly, Defendants fail to inform participants that they are receiving benefits that are less valuable than what the law requires.

17.    The members of the Classes are participants of the AT&T Plan that meet the class definition set forth below, and the beneficiaries of those participants. Class members are harmed by Defendants' calculation and payment of benefits that are less than the actuarial equivalent of their protected retirement benefits, in violation of ERISA.

18.    The Class members are additionally harmed by Defendants' disclosures because Class Members do not receive accurate information that is mandated by law and are unable to plan for their retirement without misimpressions about the value of benefits available to them under ERISA.

19.    Plaintiffs bring this action on behalf of the Classes pursuant to ERISA § 502(a)(2) and (a)(3), 29 U.S.C. 1132(a)(2) and (a)(3) for all appropriate equitable relief, including but not limited to: a declaration that the Plan's Joint and Survivor Annuity Factors violate ERISA's actuarial equivalence and non-forfeitability requirements as to the Classes; an injunction requiring Plan fiduciaries to ensure that the Plan pays actuarially equivalent benefits to all Class members; an injunction requiring AT&T Inc. to amend the Plan terms to comply with ERISA; reformation of the Plan as to the Classes to bring its terms into compliance with ERISA; and recalculation of benefits for all Class members who received a Joint and Survivor Annuity Benefit, and payment to them of the amounts owed under an ERISA-compliant plan.

## II. JURISDICTION AND VENUE

20.    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because it is a civil action arising under the laws of the United States, and pursuant to 29 U.S.C. § 1332(e)(1), which provides for federal jurisdiction of actions brought under Title I of ERISA.

21. This Court has personal jurisdiction over AT&T Inc. because it transacts business in, employs people, and has significant contacts with this District, and because ERISA provides for nationwide service of process.

22. This Court has personal jurisdiction over the AT&T Plan because it offers and pays pension benefits to participants and beneficiaries in this District, and because ERISA provides for nationwide service of process.

23. This Court has personal jurisdiction over AT&T Services Inc. because it transacts business in, and has significant contacts with, this District, and because ERISA provides for nationwide service of process.

24. Venue is proper in this District pursuant to ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2), because Defendant AT&T Inc. may be found in, employed Plaintiffs Scott, Gilchrist, and other Plan participants in, and otherwise does business in this District.

25. Venue is proper in this District pursuant to ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2), because on information and belief, thousands of Plan participants reside in this District.

26. Venue is proper in this District pursuant to ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2) because Plaintiffs Scott and Gilchrist reside and may be found in this District, and they worked for AT&T Inc. or one of its subsidiaries in this district.

27. Venue is also proper in this District pursuant to 28 U.S.C. § 1391 because Defendant AT&T Inc. does business in this District.

### III.  PARTIES

**Plaintiffs**

28. Plaintiff Timothy Scott is a resident of Newark, California. He worked for AT&T Services, Inc. or its predecessors in Oakland, California from August 1981 to August 2015 and participates in the West Program of the Plan. In 2015, Plaintiff Scott retired at age 58 and started receiving a 75% joint and survivor annuity. Based on the information available to Plaintiffs, Plaintiff Scott is harmed because Defendants applied a Joint and Survivor Annuity Factor to the calculation of his benefit, such that he is receiving less than the actuarial equivalent of the single life annuity option that was available to him when he retired at age 58.

29.     Plaintiff Patricia Gilchrist is a resident of Brentwood, California. She worked for AT&T Inc. or its predecessors from April 1979 to October 2012 and participates in the Non-Bargained Program of the Plan. In 2012, Plaintiff Gilchrist retired at age 55 and started receiving a 50% joint and survivor annuity. Based on the information available to Plaintiffs, Plaintiff Gilchrist is harmed because Defendants applied a Joint and Survivor Annuity Factor to the calculation of her benefit, such that she is receiving less than the actuarial equivalent of the single life annuity option that was available to her when she retired at age 55.

30.     Plaintiff Karen Fisher is a resident of Cheney, Kansas. She worked for AT&T, Inc. or its predecessors from 1982 to 2007, when she left the company at the age of 46. She is a fully vested participant in the Southwest Program of the Plan. Based on the information available to Plaintiffs, Plaintiff Fisher is harmed because she has elected a Joint and Survivor Annuity, and Defendants applied a Joint and Survivor Annuity Factor to the calculation of her benefit, such that she receives less than the actuarial equivalent of the single life annuity option that was available to her when she retired at age 61.

31.     Plaintiff Helen Maldonado-Valtierra is a resident of Irving, Texas. She worked for AT&T Inc. or its predecessors from 1993 to 2015 and participates in the Southwest Program of the Plan. In 2015, Plaintiff Maldonado-Valtierra retired at age 63 and started receiving a 50% joint and survivor annuity. Based on the information available to Plaintiffs, Plaintiff Maldonado-Valtierra is harmed because Defendants applied a Joint and Survivor Annuity Factor to the calculation of her benefit, such that she is receiving less than the actuarial equivalent of the single life annuity option available to her when she retired.

32.     Plaintiff Dan Koval is a resident of Metuchen, New Jersey. He worked for AT&T Inc. or its predecessors for approximately 34 years and participates in the AT&T Legacy Management Program of the Plan. In 2015, Plaintiff Koval retired at age 55 and is currently receiving a joint and survivor annuity. Based on the information available to Plaintiffs, Plaintiff Koval is harmed because Defendants applied a Joint and Survivor Annuity Factor to the calculation of his benefit, such that he is receiving less than the actuarial equivalent of the single life annuity option available to him when he retired.

33.     Plaintiff Judy D. Duff is a resident of Columbus, Georgia. She worked for AT&T Inc. or its predecessors and participates in the Mobility Program of the Plan. Plaintiff Duff has retired and receives a joint and survivor annuity. Based on the information available to Plaintiffs, Plaintiff Duff is harmed because Defendants applied a Joint and Survivor Annuity Factor to the calculation of her benefit, such that she is receiving less than the actuarial equivalent of the single life annuity option available to her when she retired.

34.     Plaintiff John Griffin is a resident of Acworth, Georgia. He worked for AT&T Inc. or its predecessors and participates in the Southeast Management Program of the Plan. Plaintiff Griffin has retired and receives a joint and survivor annuity. Based on the information available to Plaintiffs, Plaintiff Griffin is harmed because Defendants applied a Joint and Survivor Annuity Factor to the calculation of his benefit, such that he is receiving less than the actuarial equivalent of the single life annuity option available to him when he retired.

35.     Plaintiff Kenneth Rhodes is a resident of Deatsville, Alabama. He worked for AT&T Inc. or its predecessors and participates in the Southeast Program of the Plan. Plaintiff Rhodes has retired and receives a joint and survivor annuity. Based on the information available to Plaintiffs, Plaintiff Rhodes is harmed because Defendants applied a Joint and Survivor Annuity Factor to the calculation of his benefit, such that he is receiving less than the actuarial equivalent of the single life annuity option available to him when he retired.

36.     Plaintiff Judy Dougherty is a resident of Chesterfield, Virginia. She worked for AT&T Inc. or its predecessors and participates in the AT&T Legacy Bargained Program of the Plan. Plaintiff Dougherty has retired and receives a joint and survivor annuity. Based on the information available to Plaintiffs, Plaintiff Dougherty is harmed because Defendants applied a Joint and Survivor Annuity Factor to the calculation of her benefit, such that she is receiving less than the actuarial equivalent of the single life annuity option available to her when she retired.

37.     Plaintiff John Kelly is a resident of East Islip, NY. He worked for AT&T Inc. or its predecessors and participates in the AT&T Legacy Management Program. Plaintiff Kelly has retired and receives a joint and survivor annuity. Based on the information available to Plaintiffs, Plaintiff Kelly is harmed because Defendants applied a Joint and Survivor Annuity Factor to the calculation of

his benefit, such that he is receiving less than the actuarial equivalent of the single life annuity option available to him when he retired.

38.     Plaintiff Richard Walshon is a resident of New Lenox, Illinois. He worked for AT&T, Inc. or its predecessors and participates in the Non-Bargained Program of the Plan. Plaintiff Walshon retired and receives a joint and survivor annuity. Based on the information available to Plaintiffs, Plaintiff Walshon is harmed because Defendants applied a Joint and Survivor Annuity Factor to the calculation of his benefit, such that he is receiving less than the actuarial equivalent of the single life annuity option that was available to him when he retired.

39.     Plaintiff Jennifer Fryer is a resident of Simi Valley, California. She has worked for AT&T, Inc. or its predecessors from approximately 1994 to the present. She is a fully vested participant in the Non-Bargained Program and the Midwest Program of the Plan. Plaintiff Fryer is harmed because she will be eligible to commence her pension at her intended retirement age, but will be unable to do so without being subject to the Joint and Survivor Annuity Factors, which would result in her receiving less than the actuarial equivalent of her single life annuity. Plaintiff Fryer has not yet elected to start receiving pension benefits from the Plan but intends to do so and is currently interested in electing the joint and survivor annuity (JSA) form of benefit. She has joined this lawsuit because she does not wish to be adversely impacted by outdated JSA conversion factors.

40.     Plaintiff Vince Carabba is a resident of Eastvale, California. He has worked for AT&T, Inc. or its predecessors from approximately 2000 to the present. He is a fully vested participant in the West Program of the Plan. Plaintiff Carabba is harmed because he will be eligible to commence his pension at his intended retirement age, but will be unable to do so without being subject to the Joint and Survivor Annuity Factors, which would result in receiving less than the actuarial equivalent of his single life annuity. Plaintiff Carabba has not yet elected to start receiving pension benefits from the Plan but intends to do so and is considering electing the joint and survivor annuity (JSA) form of benefit. He has joined this lawsuit because he does dot not wish to be adversely impacted by outdated JSA conversion factors.

**Defendants**

41.    **AT&T Inc.** is a media company comprised of multiple business units, including AT&T Communications which provides mobile, broadband and other communications services both domestically and abroad, and WarnerMedia, which produces entertainment, news, and sports media for film and television.

42.    AT&T Inc. is the "plan sponsor" for the Plan within the meaning of § 3(16)(B), 29 U.S.C. § 1002(16)(B).

43.    AT&T Inc. makes contributions to the Plan to fund retirement benefits promised under the Plan.

44.    **The AT&T Defined Benefit Plan (the "Plan")** is a defined benefit plan within the meaning of ERISA § 3(35), 29 U.S.C. § 1002(35). The Plan is joined as a nominal defendant pursuant to Rule 19(a) of the Federal Rules of Civil Procedure solely to assure that complete relief can be granted.

45.    **AT&T Services, Inc. ("AT&T Services")** is a wholly-owned subsidiary of AT&T Inc., and is the Plan's "administrator" within the meaning of ERISA § 3(16)(A), 29 U.S.C. § 1002(16)(A). It is responsible for the general administration of the Plan.

46.    Under the Plan Document[2], AT&T Services is and was a "named fiduciary" of the Plan at all relevant times within the meaning of ERISA § 402(a), 29 U.S.C. § 1102(a). As such, AT&T Services has/had the authority to control and manage the operation and administration of the Plan.

47.    Based on AT&T Services' discretionary authority and/or discretionary responsibility for Plan administration set forth in the Plan Document, AT&T Services is also a Plan fiduciary within the meaning of § 3(21)(A)(iii), 29 U.S.C. § 1002(21)(A)(iii).

---

[2] Pursuant to ERISA § 402(a)(1), 29 U.S.C. § 1102(a)(1), the Plan is established and maintained according to a written instrument (the "Plan Document").

# IV.  LEGAL BACKGROUND

**A.     Actuarial Equivalence**

48.     Actuarial equivalence is a computation that is designed to ensure that, all else being equal, all forms of benefit payments have the same economic value as each other.

49.     Generally, an actuarial equivalence computation considers the expected longevity of a participant and an interest rate which reflects the time value of money through a reasonable rate of return based on current market conditions.

50.     To comply with ERISA, as well as to be considered a qualified plan under the Code, a plan must comply with specified valuation rules. *See* Treas. Reg. § 1.411(a)–11(a)(1).

51.     ERISA  provides that "in the case of any defined benefit plan, if an employee's accrued benefit is to be determined as an amount other than an annual benefit commencing at normal retirement age . . . the employee's accrued benefit . . . shall be the actuarial equivalent of such benefit[.]" § 204(c)(3), 29 U.S.C. § 1054(c)(3).

52.     ERISA defines "normal retirement age" as age 65, or younger if provided by the pension plan. ERISA § 3(24), 29 U.S.C. § 1002(24); *see also* 26 U.S.C. § 411(a)(8); Treas. Reg. § 1.411(a)–7(b).

53.     This actuarial equivalence requirement set forth in ERISA § 204(c)(3), 29 U.S.C. § 1054(c)(3), is repeated in the parallel Tax Code provision. 26 U.S.C. § 411(c)(3). The Treasury regulations that construe 26 U.S.C. § 411(c)(3) likewise confirm the actuarial equivalence rule.  26 C.F.R. § 1.411(c)-1(e) (referring to the "actuarial equivalence" of the participant's accrued benefit in conformance with Treasury regulations).

54.     In addition to the valuation rules referenced above, to comply with ERISA and to be considered a qualified trust under the Tax Code, a plan also must comply with certain actuarial equivalence rules. 26 CFR § 1.401(a)-11(a)(1).

55.     The Treasury provides reasonable interest rates and mortality tables that are regularly updated. *See* 26 U.S.C. § 417(e)(3). These interest rates and mortality tables provide a reference point that ensures actuarial equivalence for present value calculations.

56.     For a "qualified joint and survivor annuity," ERISA § 205(a), 29 U.S.C. § 1055(a) requires that pension plans offer married participants the option of receiving a payment stream for their life and their spouse's life after the retiree dies; this is a "joint and survivor annuity." ERISA § 205(a)-(d), 29 U.S.C. § 1055(a)-(d).

57.     ERISA also provides that the joint and survivor annuity shall be "***the actuarial equivalent of a single annuity*** for the life of the participant." ERISA §§ 205(d)(1)(B), (d)(2)(ii), 29 U.S.C. §§ 1055(d)(1)(B), 1055(d)(2)(ii)  (emphasis added). This definition is repeated in the Tax Code provision of ERISA at 26 U.S.C. § 417(b)(2) (defining "Qualified Joint and Survivor Annuity" as "the actuarial equivalent of a single life annuity for the life of the participant.") and § 417(g)(2) (defined "Qualified Optional Survivor Annuity" as "the actuarial equivalent of a single life annuity for the life of the participant.").

58.     Similarly, the Treasury regulations concerning joint and survivor annuities require that a "qualified joint and survivor annuity ***must be at least the actuarial equivalent*** of the normal form of life annuity or, if greater, of any optional form of life annuity offered under the plan. Equivalence may be determined, on the basis of ***consistently applied reasonable*** actuarial factors[.]" 26 C.F.R. § 1.401(a)-11(b)(2) (emphasis added).

59.     Treasury regulations explain this means "in the case of a married participant, the QJSA must be ***at least as valuable as any other optional form of benefit payable under the plan at the same time.***" 26 C.F.R. § 1.401(a)-20 Q&A-16 (emphasis added)

60.     In effect, the default form of pension annuity paid to a married retiree should have the same value as the single life annuity that retiree could have elected and would be paid to that retiree's analogous unmarried co-worker of the same age.

**B.     Non-Forfeitability**

61.     ERISA § 203(a), 29 U.S.C. § 1053(a), sets forth "Nonforfeitability requirements," which provide that "an employee's right to his normal retirement benefit is non-forfeitable upon the attainment of normal retirement age[.]"

62.     The Treasury regulation which "defines the term 'nonforfeitable' for purposes of these [non-forfeitability] requirements," 26 C.F.R. § 1.411(a)-4(a), states that "adjustments *in excess of reasonable actuarial reductions*, can result in rights being forfeitable." (emphasis added).

63.     Thus, distribution of retirement benefits that are less than their actuarial equivalent value constitutes an impermissible forfeiture under ERISA § 203(a), 29 U.S.C. § 1053(a).

## V.  FACTUAL ALLEGATIONS

### A.     The AT&T Plan

64.     The Plan is an "employee pension benefit plan" within the meaning of ERISA § 3(2)(A), 29 U.S.C. § 1002(2)(A) and a defined benefit plan within the meaning of ERISA § 3(35), 29 U.S.C. § 1002(35).

65.     Pursuant to ERISA § 402(a)(1), 29 U.S.C. § 1102(a)(1), the Plan is established and maintained according to a written instrument (the "Plan Document").

66.     The Plan provides retirement benefits to substantially all U.S. bargained and non-bargained employees of AT&T Inc. and its subsidiaries. As of the 2018 Plan year, the Plan had more than 475,000 participants and assets valued at approximately $49 billion.

67.     Benefits under the Plan are provided through separate programs that each provide benefits to a particular group of participants or beneficiaries. To the best of Plaintiffs' knowledge based on the available information, the separate programs correspond to subsidiary companies which merged with or were acquired by AT&T Inc. over time.

68.     To the best of Plaintiffs' knowledge based on the available information, tens of thousands of Plan participants live in California, including in this District, and receive benefits through the Plan.

69.     Under the Plan, a participant's normal retirement benefit is expressed as a series of monthly benefit payments beginning at "normal retirement age," and continuing until a participant's death. No payments are made after the participant's death. An annuity commencing at retirement and ceasing at the retiree's death is called a "single life annuity."

70.     The default form of payment for unmarried participants is a single life annuity.

71.    The Plan defines "Actuarial Equivalence" as "equality in value of the aggregate amounts expected to be received under different times and forms of payment using the Applicable Interest Rate and Applicable Mortality Table."

72.    Though the Plan Document purports to comply with ERISA and all other applicable law and to calculate actuarial equivalent benefits for certain participants by using the "applicable interest rate" and the "applicable mortality table" specified in 26 U.S.C. § 417(e)(3), the Plan does not in fact pay to Class members the "actuarial equivalent" for Joint and Survivor Annuities.

73.    Rather, it determines retirement benefits for Class members by applying the Joint and Survivor Annuity Factors contained in the Plan Document, which result in participants receiving less than the actuarial equivalent of their vested accrued benefit, in violation of ERISA. This constitutes equitable fraud or inequitable conduct.

74.    AT&T Services, as the Plan's Named Fiduciary and Plan Administrator was responsible for calculating and paying benefits in accordance with ERISA's requirements and the Plan's terms, unless those Plan terms themselves violated ERISA, in which case ERISA's fiduciary duties required AT&T Services to act in accordance with ERISA rather than the Plan. *See* 29 U.S.C. 1104(a)(1)(D). AT&T Services acted imprudently and disloyally because it calculated retirement benefits using the Joint and Survivor Annuity Factors, which resulted in Class members receiving less than the actuarial equivalent of their vested accrued benefit. This allowed AT&T Services' corporate parent, AT&T, Inc., to save money by reducing the amount of money AT&T Inc., the Plan sponsor, had to contribute to the Plan to fund benefits.

75.    AT&T Services' utilization of the Joint and Survivor Annuity Factors to calculate retirement benefits for the Plan also allowed its corporate parent, AT&T Inc., to report in its SEC-mandated disclosure to shareholders a smaller pension benefit obligation, which improperly reduced AT&T, Inc.'s disclosed corporate liabilities and misrepresented AT&T's true financial picture.

**B.    Joint and Survivor Annuity Benefits Under the Plan**

76.    For the Classes, the Reduction Factors used by AT&T Services to determine Joint and Survivor Annuities result in payment of a benefit that is less than the actuarial equivalent of the Single Life Annuity at retirement, as set forth below:

| Table 1. Reduction Factors Used by Plan for Joint and Survivor Annuities ("J&SA") | | | |
|---|---|---|---|
| **Program** | **Reduction Factors** | | |
| | **50% J&SA** | **75% J&SA** | **100% J&SA** |
| AT&T Legacy Bargained Program | 0.88 | 0.82 | N/A |
| AT&T Legacy Management Program | 0.88 | 0.82 | N/A |
| Bargained Cash Balance Program | 0.90 | 0.85 | N/A |
| Bargained Cash Balance Program #2 | 0.90 | 0.85 | N/A |
| DIRECTV Program[3] | 0.84 | 0.77 | 0.72 |
| East Program | 0.90 | 0.85 | N/A |
| Management Cash Balance Program | 0.90 | 0.85 | N/A |
| Midwest Program | 0.85 | 0.83 | .80 |
| Mobility Bargained Program[4] | 0.90 | 0.85 | 0.81 |
| Mobility Program[5] | 0.90 | 0.85 | N/A |
| Non-bargained Program | 0.90 | 0.85 | 0.80 |
| Southeast Management Program | 0.85 | 0.78 | N/A |
| Southeast Program | 0.85 | 0.78 | N/A |
| Southwest Program | 0.90 | 0.85 | 0.80 |
| West Program | 0.90 | 0.85 | 0.80 |
| **ERISA Compliant Factors Calculated Based on 26 U.S.C. § 417(e) Assumptions[6]** | **0.92** | **0.89** | **0.86** |

---

[3] Whereas most component programs utilize a pre-set, one-size-fits-all Reduction Factor to make J&SA conversions, the DIRECTV program uses a highly outdated mortality table from 1971 to generate a different conversion factor depending on the retiree's age and the age of the retiree's spouse. The Reduction Factors reflected here are what the outdated 1971 table generates for an individual at normal retirement age with a spouse the same age.

[4] Like the DIRECTV program, the Mobility Bargained Program does not necessarily use a one-size-fits-all Reduction Factor. With the exception of certain individuals who were participants before 2006, these programs instead use a mortality table that is many decades out of date. The Reduction Factors reflected here are what that outdated table generates for an individual at normal retirement age with a spouse the same age.

[5] Like the DIRECTV program, the Mobility Program does not necessarily use a one-size-fits-all Reduction Factor. With the exception of certain individuals who were participants before 2006, these programs instead use a mortality table that is many decades out of date. The Reduction Factors reflected here are what that outdated table generates for an individual at normal retirement age with a spouse the same age.

[6] These figures are based on a participant who retires at age 65 and whose spouse is the same age as the participant. The Joint and Survivor Annuity Reduction Factors grow further from actuarial equivalence the younger the retiree's age and/or the older the spouse's relative age.

77.     Thus, for example, if a participant in the Southeast Program has a single life annuity benefit of $1,000 per month starting at age 65, and she retired at age 65 taking a 50% Joint and Survivor Annuity, under the Plan's rules her monthly pension payments would each be $850 (0.85 x $1000). And, if her spouse (who is the same age as the participant) survived her, the spouse would receive monthly payments of $425 (50% x $850). If she had been paid the actuarial equivalent of her benefits, she would have received $920 (0.92 x $1000) per month during her lifetime and her surviving spouse would have received $460 (50% x $920) per month if the spouse survives her. Thus, she is underpaid about $70 per month for her life and her surviving spouse is underpaid $35 per month for his or her life.

78.     If, instead, the same Southeast Program participant elected a 75% Joint and Survivor Annuity, under the Plan's rules her monthly pension payments would each be $780 (0.78 x $1,000). And, if her spouse (who is the same age as the participant) survived her, the spouse would receive monthly payments of $585 (75% x $780). If she had been paid the actuarial equivalent of her benefits, she would have received monthly payments of $890 (0.89 x $1,000), for her lifetime, and if her spouse survived her, the spouse would receive $667.50 (75% x $890) per month until the spouse's death. Thus, the participant is underpaid $110 per month for her life and her surviving spouse is underpaid $82.50 per month for the spouse's life.

79.     The calculation of a Joint and Survivor Annuity when using a reasonable interest rate and reasonable mortality table (e.g., those prescribed by 26 U.S.C. § 417(e)), is substantially more favorable for participants than use of the Plan's Joint and Survivor Reduction Factors, as shown in Table 1 above.

80.     The percentage of benefits forfeited because of the ERISA non-compliant Reduction Factors applied to Joint and Survivor Annuity under the Plan's terms exceed 14% in certain circumstances.

81.     With limited exceptions, the Plan does not disclose the assumptions that form the basis of the Joint and Survivor Annuity Reduction Factors. To the best of Plaintiffs' knowledge based on the available information, these factors have not been updated in over a decade, despite dramatic increases in longevity amongst the American public.

82.     The increases in longevity of the American public are reflected in the longevity increases in the mortality tables provided for by 29 U.S.C. § 1055(g), which are updated routinely by the Treasury Department.

83.     Nonetheless, the Plan uses Joint and Survivor Annuity Reduction Factors that are outdated, unreasonable, less than the actuarial equivalent value of a participant's single life annuity benefit, and thus result in the illegal forfeiture of vested benefits under ERISA.

84.      The Joint and Survivor Annuity Reduction Factors also diverge from the actuarial assumptions used to calculate other forms of benefits, such as deferred lump sum payments. As such, Plan fails to use "consistently applied reasonable actuarial factors" in conformance with 26 C.F.R. § 1.401(a)-11(b)(2).

85.     In fact, the Plan generally does not attempt to determine "actuarial equivalence" for Joint and Survivor Annuities, and instead calculates those benefits using the excessive Reduction Factors set forth in Table 1 above. And where it does purport to determine "actuarial equivalence," it uses mortality assumptions up to fifty years out of date.

86.      Thus, while the Plan acknowledges the actuarial equivalence requirement of ERISA, it fails to utilize an actuarial equivalence calculation for Joint and Survivor Annuities.

87.     It is unreasonable for the Plan Administrator to fail to provide actuarially equivalent benefits to all participants in the Plan.

88.     Because ERISA requires that plan fiduciaries treat all plan participants equally and equitably, AT&T Services as the Plan Administrator must act loyally and prudently to ensure that all participants are receiving the actuarial equivalence of their accrued vested benefits. The Joint and Survivor Annuity Reduction Factors that AT&T Services used to calculate these benefits penalize participants for being married, compared to those who are single at retirement.

89.     The Plan's failure to provide actuarially equivalent Joint and Survivor Annuity Reduction Factors harms participants taking these benefits, causing them to lose, in the aggregate, tens of millions of dollars in benefits.

90.     Moreover, AT&T Services failed to disclose to participants that they would receive less than the actuarial equivalent value of their benefit if they received a Joint and Survivor Annuity.

**C.      Other Actuarial Assumptions by the Plan**

91.      For purposes of minimum funding, ERISA requires that "the determination of any present value or other computation under this section shall be made on the basis of actuarial assumptions and methods—(A) each of which is reasonable (taking into account the experience of the plan and reasonable expectations), and (B) which, in combination, offer the actuary's best estimate of anticipated experience under the plan." ERISA § 303(h), 29 U.S.C. § 1083(h).

92.      Here, the Plan's minimum funding requirements are determined using rates of mortality based on RP-2014 Combined Healthy Mortality Table with projection Scale MP-2018 and an interest rate of 6.5%, for Plan Year 2018.

93.      In AT&T Inc.'s Annual Reports, it discloses to shareholders the value of the Plan's pension obligations, which is calculated using updated interest rate and mortality assumptions that reflect current experience.  For its Annual Reports, AT&T Inc. determines the interest rates using current yield curves for several hundred high-quality, fixed income corporate bonds, and updates "its assumed mortality rates to reflect [its] best estimate of future mortality tables on an annual basis to reflect current longevity rates."

94.      To the best of Plaintiffs' knowledge based on the available information, the actuarial assumptions the Plan uses for ERISA's minimum funding requirements and for disclosures in the Annual Reports to AT&T shareholders both assume greater longevity and a higher rate of return than do the assumptions underpinning the Joint and Survivor Annuity Reduction Factors. The Plan therefore used different assumptions, regarding the same variables, to calculate ERISA funding requirements and for shareholder disclosures (using *updated* assumptions), from those it used to calculate benefit reductions for Joint and Survivor Annuities (using *outdated* assumptions).

95.      Thus, the Plan does not use "reasonable" actuarial assumptions based on "the experience of the plan and reasonable expectations" and which "offer the actuary's best estimate of anticipated experience under the plan" when calculating Plan participants' joint and survivor annuities, resulting in a reduction of benefits that is not permitted by ERISA.

**D.    AT&T Failed to Disclose, and Otherwise Misrepresented, the Amount of Participants' ERISA-Protected Benefits. This Limits AT&T's Funding Obligations and Reduces AT&T's Expenses.**

96.    ERISA requires that a fiduciary provide accurate information to participants so that they can make informed decisions about their retirement benefit choices. *Washington v. Bert Bell/Pete Rozelle NFL Ret. Plan*, 504 F.3d 818, 823-24 (9th Cir. 2007); *Krohn v. Huron Mem'l Hosp.*, 173 F.3d 542, 547-58 (6th Cir. 1999).

97.    AT&T has admitted that ERISA requires that Defendants provide complete and accurate information to the Plan participants about their benefit calculations.

98.    When deciding if and when to retire, and what form of benefit to elect, Plaintiffs and the Classes rely and relied upon the accuracy of information provided to them by Defendants to plan for retirement.

99.    Defendants provide information to participants detailing the amount of retirement benefits AT&T will pay them under various forms of retirement benefit.

100.    The information Defendants disclosed and continue to disclose to Plan participants concerning the optional forms of benefits incorporate the illegal Reduction Factors discussed above, preventing Plaintiffs and other Plan participants from adequately assessing what form of benefit to elect and how best to plan for their retirements.

101.    Defendants do not disclose all the assumptions underlying the Reduction Factors to Plaintiffs and other participants.

102.    Further, Defendants do not disclose to Plaintiffs and other participants the amount of pension benefit they would receive if Defendants utilized actuarially equivalent assumptions.

103.    Defendants failed to disclose to Class members that the Reduction Factors applied to the Joint and Survivor Annuities provided pensions that were less than the actuarial equivalent value of the single life annuity available when they retired. Thus, Class members were forced to choose between improperly reduced Joint and Survivor Annuities or forms of benefit that did not necessarily meet their retirement needs, such as a single life annuity or single lump sum payment. Class members sacrificed economic value by selecting the Joint and Survivor Annuities rather than a single life

annuity, the full actuarial value of which is protected by ERISA but not disclosed or provided to Class members.

104.    Defendants have made the same or similar disclosures (or failures to disclose) to Class members at large. AT&T financially benefits by failing to disclose to the Classes that they are receiving less than the actuarial equivalent value of their ERISA-protected pensions and foisting upon Plaintiffs and other Class members retirement outcomes that are not compliant with ERISA.

105.    AT&T gets a direct financial benefit from participants electing a Joint and Survivor Annuity subject to illegal Reduction Factors, because AT&T pays these participants less than they are required under ERISA and thereby reduces its funding obligations to the Plan.

## VI.  CLASS ALLEGATIONS

106.    Plaintiffs bring this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of themselves and participants in the Plan (and their beneficiaries) who either: (1) have not commenced receiving benefits or (2) are receiving a Joint and Survivor Annuity which is less than the value of their Single Life Annuity when converted to a Joint and Survivor Annuity using the interest rates and mortality tables set forth in 26 U.S.C. § 417(e).

**A.    Numerosity**

107.    The members of the Classes are so numerous that joinder of all members is impractical. To the best of Plaintiffs' knowledge based on the available information, the Classes includes well over one hundred thousand participants.  According to governmental filings, there are over 170,257 active Plan participants in the Plan and more than 171,878 participants who are retired and receiving benefits under the Plan.

**B.    Commonality**

108.    There are questions of law and fact common to the Classes and these questions predominate over questions affecting only individual Class members. Common legal and factual questions include, but are not limited to:

   A.  Whether the Joint and Survivor Annuity Factors applicable to the Classes violate the actuarial equivalence requirements of ERISA?

B.  Whether the Joint and Survivor Annuity Factors applicable to the Classes cause Plan participants in the Classes to illegally forfeit their vested benefits?

C.  Whether AT&T Services violated its ERISA fiduciary duties of loyalty, prudence, and to follow the Plan Document *only if* its terms are consistent with ERISA?

D.  Whether AT&T Services should be enjoined from using the Plan's Joint and Survivor Annuity Factors and required to calculate benefits based on reasonable actuarial equivalence calculations which are consistent with the Plan's other actuarial equivalence determinations?

E.  Whether the Plan should be reformed to eliminate any Joint and Survivor Annuity Factors which reduce pension benefits paid or payable to Plan participants below the actuarial equivalent value of those benefits?

F.  Whether Plaintiffs and members of the Classes should be paid additional benefits under the Plan as reformed to provide them the difference between the benefit the Plan previously determined to be their reduced benefit and the actuarially equivalent value of their benefit?

## C.  Typicality

109.    Plaintiffs' claims are typical of the claims of the members of the Classes because they arise out of the same policies and practices as alleged herein, and all members of the Classes are affected by Defendants' wrongful conduct.

## D.  Adequacy

110.    Plaintiffs will fairly and adequately represent the Classes and they have retained counsel experienced and competent in the prosecution of ERISA class actions. Plaintiffs have no interests antagonistic to those of other members of the Classes. Plaintiffs are committed to the vigorous prosecution of this action and anticipate no difficulty in the management of this litigation as a class action.

## E.  Rule 23(b)(1) Requirements

111.    The requirements of Rule 23(b)(1)(A) are satisfied because prosecution of separate actions by the members of the Classes would create a risk of establishing incompatible standards of conduct for Defendants

112.    The requirements of Rule 23(b)(1)(B) are satisfied because adjudications of these claims by individual members of the Classes would, as a practical matter, be dispositive of the interests of the other members not parties to the actions, or substantially impair or impede the ability of other members of the Classes to protect their interests.

1

**F.      Rule 23(b)(2) Requirements**

2      113.    Class action status is also warranted under Rule 23(b)(2) because AT&T Services and

3 AT&T, Inc. have acted vis-à-vis the Plan as a whole, which should result in appropriate final

4 injunctive, declaratory, or other appropriate equitable relief with respect to the Classes as a whole.

5      114.    Individual Class members do not have an interest in controlling the prosecution of

6 these claims in individual actions rather than a class action because the equitable relief sought by any

7 Class member will either inure to the benefit of the Plan or affect each Class member equally.

8 **G.      Rule 23(b)(3) Requirements**

9      115.    If the Classes are not certified under Rule 23(b)(1) or (b)(2), then certification under

10 (b)(3) is appropriate because questions of law or fact common to members of the Classes

11 predominate over any questions affecting only individual members.  The common issues of law or

12 fact that predominate over any questions affecting only individual members include: those listed

13 above in Section VI.B.

14      116.    There are no difficulties in managing this case as a class action.

15                            **VII.  CAUSES OF ACTION**

16 **COUNT I: VIOLATION OF THE ACTUARIAL EQUIVALENCE REQUIREMENT AT ERISA § 204(C)(3), 29 U.S.C § 1054(C)(3)**

17 **(AGAINST AT&T SERVICES AND AT&T INC.)**

18      117.    Plaintiffs re-allege and incorporate herein by reference all prior allegations in this

19 Complaint.

20      118.    ERISA § 204(c)(3), 29 U.S.C. § 1054(c)(3) requires "if an employee's accrued

21 benefit is to be determined as an amount other than an annual benefit commencing at normal

22 retirement age [here 65] . . . the employee's accrued benefit . . . shall be the actuarial equivalent of

23 such benefit[.]"

24      119.    Thus, under § 204(c)(3), 29 U.S.C. § 1054(c)(3), if a participant takes her benefit as a

25 Joint and Survivor Annuity, and the Plan reduces the participant's benefit, the reduced benefit must

26

27

28

1  be the actuarial equivalent of that benefit expressed as a single life annuity benefit starting at age

2  65.[7]

3     120.   Relevant here, the Plan sets forth Reduction Factors used to determine the value of

4  Joint and Survivor Annuities.

5     121.   The Plan defines "Actuarial Equivalence" as "equality in value of the aggregate

6  amounts expected to be received under different times and forms of payment using the Applicable

7  Interest Rate and Applicable Mortality Table." Yet the Plan does not calculate Joint and Survivor

8  Annuities using reasonable assumptions for actuarial equivalence. Rather, it uses preset Reduction

9  Factors, which result in payment of less than the actuarial equivalent of the participant's vested

10  accrued benefit. This violates ERISA § 204(c)(3), 29 U.S.C. § 1054(c)(3).

11     122.   AT&T Services, as a Named Fiduciary and the Plan Administrator, was and is

12  responsible for paying all Plan participants the full value of their vested retirement benefits upon

13  retirement. But AT&T Services instead calculates benefits using outdated, unreasonable, and non-

14  actuarially equivalent Reduction Factors for Joint and Survivor Annuities. As such, AT&T Services

15  violates ERISA § 204(c)(3), 29 U.S.C. § 1054(c)(3) by impermissibly paying Plan participants less

16  than the actuarial equivalent of their ERISA-protected retirement benefits.

17     123.   AT&T Inc., as the Plan Sponsor, was and is responsible for maintaining Plan terms

18  that are consistent with ERISA. To the best of Plaintiffs' knowledge based on the available

19  information, for over a decade AT&T Inc. failed to update the Reduction Factors for Joint and

20  Survivor Annuities to conform with ERISA's actuarial equivalence requirement. As such, AT&T

21  Inc. violates ERISA § 204(c)(3), 29 U.S.C. § 1054(c)(3).

22     124.   ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), authorizes a participant or beneficiary to

23  bring a civil action to "(A) enjoin any act or practice which violates any provision of this title or the

24

25  _____
   [7] Separately, ERISA § 205, 29 U.S.C. § 1055, requires that, at the time a participant retires, if she
26  takes her benefit as a Joint and Survivor Annuity, the value of the Joint Annuity must be no less the
   actuarial equivalent of the Single Life Annuity payable at retirement, even if the participant retires
27  early. *See* Count III, *infra*. Thus, Count III provides an independent claim from Count I, which is
   based on a comparison of the value of a participant's annuity on the date the participant retires to her
28  annuity at normal retirement age, even if she retires early.

terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this title or the terms of the plan."

125.    Pursuant to § 502(a)(3), 29 U.S.C. § 1132(a)(3), Plaintiffs seek all available and appropriate equitable relief against AT&T Services and AT&T Inc. to redress the violations of ERISA § 204(c)(3), 29 U.S.C. § 1054(c)(3) described herein, including, but not limited to the relief set forth below in the Prayer For Relief.

126.    ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2), authorizes a participant or beneficiary to bring a civil action "for appropriate relief under section 1109 of this title."

127.    ERISA § 409(a), 29 U.S.C. § 1109(a), mandates that "[a]ny person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary."

128.    Pursuant to ERISA § 502(a)(2) and § 409(a), 29 U.S.C. § 1132(a)(2) and §1109(a), Plaintiffs seek all available and appropriate remedies against AT&T Services to redress violations of ERISA § 204(c)(3), 29 U.S.C. § 1054(c)(3) described herein, including, but not limited to the relief set forth below in the Prayer For Relief.

### COUNT II: VIOLATION OF THE ANTI-FORFEITURE RULES AT ERISA § 203(A), 29 U.S.C. § 1053(A) (AGAINST AT&T SERVICES AND AT&T INC.)

129.    Plaintiffs re-allege and incorporate herein by reference all prior allegations in this Complaint.

130.    ERISA § 203(a) of ERISA, 29 U.S.C. § 1053(a), sets forth ERISA's "Nonforfeitability requirements," which provide that "an employee's right to his normal retirement benefit is non-forfeitable[.]" The Treasury regulation, 26 C.F.R. § 1.401(a)-14(c), which "defines the term 'nonforfeitable' for purposes of these [non-forfeitability] requirements" state that "adjustments in excess of reasonable actuarial reductions, can result in rights being forfeitable."

131.     Thus, paying a participant less than the actuarial equivalent of her accrued vested benefit results in an illegal forfeiture of her vested benefits.  ERISA § 203(a), 29 U.S.C. § 1053(a).

132.     As explained above, Class members received less than the actuarial equivalent of their benefits (expressed as single life annuities) because the Plan's Reduction Factors for Joint and Survivor Annuities provided them with less than the actuarial equivalent of their ERISA-protected benefits.[8]

133.     AT&T Services, as the Plan Administrator, was and is responsible for paying all Plan participants the full value of their non-forfeitable vested benefits. But AT&T Services instead calculated benefits using outdated and non-actuarially equivalent Reduction Factors for Joint and Survivor Annuities As such, AT&T Services caused and causes Plan participants to forfeit their ERISA-protected benefits. Therefore, AT&T Services, violates ERISA § 203(a), 29 U.S.C. § 1053(a).

134.     AT&T Inc., as the Plan Sponsor, was and is responsible for maintaining Plan terms that are consistent with ERISA. To the best of Plaintiffs' knowledge based on the available information, for over a decade AT&T Inc. failed to update the Reduction Factors for Joint and Survivor Annuities to ensure that they provided participants with the actuarial equivalent of their vested retirement benefits. As such, AT&T Inc. violates ERISA § 203(a), 29 U.S.C. § 1053(a), by maintaining Plan terms that result in an illegal forfeiture of benefits.

135.     ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), authorizes a participant or beneficiary to bring a civil action to "(A) enjoin any act or practice which violates any provision of this title or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this title or the terms of the plan."

136.     Pursuant to § 502(a)(3), 29 U.S.C. § 1132(a)(3), Plaintiffs seek all available and appropriate equitable relief against AT&T Services and AT&T Inc. to redress the violations of

---

[8] Separately, ERISA § 205, 29 U.S.C. § 1055, requires that, at the time a participant retires, if she takes her benefit as a Joint and Survivor Annuity, the value of the Joint Annuity must be no less the actuarial equivalent of a Single Life Annuity payable on that date of retirement, even if the participant retires early. *See* Count III, *infra*. Thus, Count III provides an independent claim from Count II, which is based on a comparison of the value of a participant's annuity on the date the participant retires to her annuity at normal retirement age, even if she retires early.

ERISA § 203(a), 29 U.S.C. § 1054(a) described herein, including, but not limited to the relief set forth below in the Prayer For Relief.

137.    ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2), authorizes a participant or beneficiary to bring a civil action "for appropriate relief under section 1109 of this title."

138.    ERISA § 409(a), 29 U.S.C. § 1109(a), mandates that "[a]ny person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary."

139.    Pursuant to ERISA § 502(a)(2) and § 409(a), 29 U.S.C. § 1132(a)(2) and §1109(a), Plaintiffs seek all available and appropriate remedies against AT&T Services to redress violations of ERISA § 203(a), 29 U.S.C. § 1054(a) described herein, including, but not limited to the relief set forth below in the Prayer For Relief.

**COUNT III: VIOLATION OF THE QUALIFIED JOINT AND SURVIVOR ANNUITY REQUIREMENT AT ERISA § 205, 29 U.S.C. § 1055 (AGAINST AT&T SERVICES AND AT&T INC.)**

140.    Plaintiffs re-allege and incorporate herein by reference all prior allegations in this Complaint.

141.    ERISA § 205(a)-(d), 29 U.S.C. § 1055(a)-(d) requires that all plans shall provide benefits in the form of a "Qualified Joint and Survivor Annuity" and "Qualified Optional Survivor Annuity" and ERISA § 205(d), 29 U.S.C. § 1055(d) provides that they must be "the actuarial equivalent of a single annuity for the life of the participant."

142.    Treasury regulations setting forth plan requirements provide that a "qualified joint and survivor annuity must be at least the actuarial equivalent of the normal form of life annuity or, if greater, of any optional form of life annuity offered under the plan…determined, on the basis of consistently applied reasonable actuarial factors[.]" 26 C.F.R. § 1.401(a)-11(b)(2).

143.    In other words, ERISA § 205(a)-(d) requires that at the time a participant retires, if she takes her benefit as a Joint and Survivor Annuity, the value of the Joint Annuity must be no less

the actuarial equivalent of the Single Life Annuity payable on her retirement date, even if the participant retires early.

144.    As explained above, the Plan's Reduction Factors for Joint and Survivor Annuities reduce a participant's benefits to less than the actuarial equivalent value of their ERISA protected benefits expressed as the Single Life Annuity at the same retirement date, and they are based on different actuarial assumptions than the Plan uses for determining its funded status and for calculating other forms of benefits.

145.    Class members whose benefits are calculated using the Plan's Reduction Factors for Joint and Survivor Annuities receive less than actuarial equivalent value of their retirement benefits expressed as single life annuity at the same retirement date because the factors are unreasonable and inconsistent with the actuarial assumptions the Plan uses for determining its funded status and for calculating other forms of benefits.

146.    As such, the Plan's Reduction Factors for Joint and Survivor Annuities, set forth in Table 1 above, violate ERISA § 205(a)-(d), 29 U.S.C. § 1055(a)-(d).

147.    AT&T Services, as the Plan Administrator, was and is responsible for paying all Plan participants the full value of their ERISA protected benefits. Instead, AT&T Services determined benefits using outdated and non-actuarially equivalent Reduction Factors for Joint and Survivor Annuities, which use different actuarial assumptions than are used for deferred lump sum payments or for funding calculations. As such, AT&T Services does not pay participants actuarially equivalent Joint and Survivor Annuities as required by ERISA. Therefore, AT&T Services violated ERISA § 205(a)-(d), 29 U.S.C. § 1055(a)-(d).

148.    ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), authorizes a participant or beneficiary to bring a civil action to "(A) enjoin any act or practice which violates any provision of this title or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this title or the terms of the plan."

149.    Pursuant to § 502(a)(3), 29 U.S.C. § 1132(a)(3), Plaintiffs seek all available and appropriate equitable relief against AT&T Services and AT&T Inc. to redress the violations of

ERISA § 205, 29 U.S.C. § 1055 described herein, including, but not limited to the relief set forth below in the Prayer For Relief.

150.    ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2), authorizes a participant or beneficiary to bring a civil action "for appropriate relief under section 1109 of this title."

151.    ERISA § 409(a), 29 U.S.C. § 1109(a), mandates that "[a]ny person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary."

152.    Pursuant to ERISA § 502(a)(2) and § 409(a), 29 U.S.C. § 1132(a)(2) and §1109(a), Plaintiffs seek all available and appropriate remedies against AT&T Services to redress violations of ERISA § § 205, 29 U.S.C. § 1055 described herein, including, but not limited to the relief set forth below in the Prayer For Relief.

## COUNT IV: BREACHES OF FIDUCIARY DUTY
## (AGAINST AT&T SERVICES)

153.    Plaintiffs re-allege and incorporate herein by reference all prior allegations in this Complaint.

154.    During all relevant times, AT&T Services was a Named Fiduciary of the Plan and was responsible for paying benefits in accordance with ERISA's requirements and the Plan's terms, unless those Plan terms themselves violated ERISA.

155.    ERISA § 404(a)(1)(A), 29 U.S.C. § 1104(a)(1)(A), requires AT&T Services, as the Plan Administrator charged with paying benefits consistently with ERISA's requirements, to act loyally in the best interest of all Plan participants, including the Class members. This duty further requires AT&T Services to communicate with Plaintiffs and other Plan participants honestly and accurately.

156.    ERISA § 404(a)(1)(B), 29 U.S.C. § 1104(a)(1)(B), requires that a AT&T Services, as the Plan Administrator charged with paying benefits consistently with ERISA's requirements, act

prudently when determining benefits owed to Plan participants, which includes ensuring that all benefits paid pursuant to the Plan conformed with ERISA's statutory requirements and Treasury regulations.

157.    ERISA § 404(a)(1)(D), 29 U.S.C. § 1104(a)(1)(D), requires that a fiduciary with respect to a plan shall discharge their duties "solely in the interest of participants and beneficiaries and . . . in accordance with the documents and instruments governing the plan" insofar as such documents are "consistent with" subchapters I and III of ERISA.

158.    AT&T Services breached these fiduciary duties by, *inter alia*:

A.    Disloyally reducing Class members' pension benefits through application of Joint and Survivor Annuity Factors in violation of 29 U.S.C. § 1104(a)(1)(A), which: (i) resulted in Class members receiving less than the actuarial equivalent of their vested accrued benefit and; (ii) enabled AT&T Inc. as Plan Sponsor, to save money by reducing the amount it had to contribute to the Plan to fund benefits and ultimately pay to Plan participants;

B.    Disloyally reducing Class members' pension benefits through application of the Joint and Survivor Annuity Factors in violation of 29 U.S.C. § 1104(a)(1)(A), which resulted in Class members receiving less than the actuarial equivalent of their vested accrued benefit and enabled AT&T Inc. as Plan Sponsor to report in its SEC-mandated disclosure to shareholders a smaller pension benefit obligation. This improperly reduced AT&T Inc.'s disclosed corporate liabilities and misrepresented AT&T's true financial picture;

C.    Disloyally providing inaccurate and misleading information to Class members by misrepresenting that the JSAs paid by the Plan were QJSAs and calculated using reasonable actuarial assumptions (when in fact the JSAs were less valuable than QJSAs based on reasonable actuarial assumptions) and by failing to tell Plan participants that the JSAs—which are the default option for married participants—are worth less than the SLAs available at retirement;

D.    Failing to act prudently when determining benefits owed to Plan participants by, *inter alia*, ensuring that all benefits paid are/were in conformed with ERISA's requirements set forth in 29 U.S.C. §§ 203, 204, and 205, which caused Class members to receive less than the full value of their ERISA-protected accrued benefit and violated AT&T Services duty of prudence set forth at 29 U.S.C. § 1104(a)(1)(B);

E.    Following Plan terms which violate ERISA (specifically 29 U.S.C. §§ 203, 204, and 205) which constitutes a fiduciary breach, 29 U.S.C. § 1104(a)(1)(D), and results in participants receiving less than the actuarial equivalent of their vested accrued benefit and result in participants forfeiting a portion of their vested accrued benefit;

159.    As a direct and proximate result of these fiduciary breaches, Plaintiffs and Class members lost tens of millions of dollars in vested accrued pension benefits.

160.    ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2), authorizes a participant or beneficiary to bring a civil action "for appropriate relief under section 1109 of this title."

161.    ERISA § 409(a), 29 U.S.C. § 1109(a), mandates that "[a]ny person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary."

162.    Pursuant to ERISA § 502(a)(2) and § 409(a), 29 U.S.C. § 1132(a)(2) and § 1109(a), Plaintiffs, on behalf of the Plan, seek all available and appropriate remedies against AT&T Services to redress and make good to the Plan all losses caused by its violations of ERISA § 404, 29 U.S.C. § 1104, including but not limited to the relief to the Plan requested below in the Prayer For Relief.

163.    ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), authorizes a participant or beneficiary to bring a civil action to: "(A) enjoin any act or practice which violates any provision of this title or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this title or the terms of the plan."

164.    Pursuant to § 502(a)(3), 29 U.S.C. § 1132(a)(3), Plaintiffs seek all available equitable relief against AT&T Services to redress their violations of ERISA and provide all appropriate relief to Plan participants, including but not limited to the relief requested below in the Prayer For Relief.

## VIII.  PRAYER FOR RELIEF

Plaintiffs pray that judgment be entered against Defendants on all claims and seek the following relief:

A. A declaratory judgment that the Plan's Reduction Factors for Joint and Survivor Annuities to the Classes violate ERISA's actuarial equivalence requirement set forth in § 204(c)(3), 29 U.S.C. § 1054(c)(3) and violate ERISA's anti-forfeiture provision at § 203(a), 29 U.S.C. § 1053(a).

B. A declaratory judgment that the Plan's Reduction Factors for Joint and Survivor Annuities to the Classes violate ERISA's joint and survivor annuity requirements set forth in § 205(a)-(d), 29 U.S.C. § 1055(a)-(d).

C. A declaratory judgment that AT&T Services breached its fiduciary duties in violation of ERISA § 404, 29 U.S.C. § 1104 for, inter alia, following Plan terms that violated ERISA and for failing to pay benefits to all Plan participant in conformance with ERISA §§ 203(a), 204(c)(3), and 205(a)-(d), 29 U.S.C. §§ 1053(a), 1054(c)(3), and1055(a)-(d).

D. Reformation of the Plan: (i) to reform the Plan to provide that Joint and Survivor Annuities Factors may only be used when they provide at least the actuarial equivalent value of a Single Life Annuity payable at the same age; (ii) to bring the Plan into full compliance with ERISA; and (iii) to pay all benefits owed to Class members based on the Reformed Plan.

E. An injunction ordering Defendants: (i) to accurately disclose to all Class members their optional forms of benefits as recalculated under the Reformed Plan, whether or not that participant has started collecting pension benefits; (ii) to eliminate and bar any future use of Reduction Factors that result in less than the actuarial equivalent value of the participant's single life annuity at retirement; (iii) to bring the Plan into compliance with ERISA §§ 203(a), 204(c)(3), and 205(a)-(d), 29 U.S.C. §§ 1053(a), 1054(c)(3), and 1055(a)-(d); and (iv) to recalculate and pay all amounts owed to Class members as a result of the violations of ERISA set forth herein.

F. An order requiring Defendants to provide an accounting of all prior payments of benefits to the Classes under the Plan for which the Reduction Factors discussed herein were used to determine Joint and Survivor Annuities, and provide information to recalculate those payments to Class members in compliance with ERISA §§ 203(a), 204(c)(3), and 205(a)-(d), 29 U.S.C. §§ 1053(a), 1054(c)(3), and 1055(a)-(d).

G. Declaratory and injunctive relief as necessary and appropriate, including enjoining the Defendants from further violating the duties, responsibilities, and obligations imposed on them by ERISA with respect to the AT&T Plan and ordering Defendants to pay future

benefits in accordance with ERISA §§ 203(a), 204(c)(3), and 205(a)-(d), 29 U.S.C. §§ 1053(a), 1054(c)(3), and 1055(a)-(d).

H. Disgorgement of any benefits or profits Defendants received or enjoyed due to the violations of ERISA §§ 203(a), 204(c)(3), and 205(a)-(d), 29 U.S.C. §§ 1053(a), 1054(c)(3), and 1055(a)-(d).

I. Restitution of all amounts Defendants kept in the Plan but were obliged to pay to Plaintiffs and other Class members in accordance with ERISA §§ 203(a), 204(c)(3), and 205(a)-(d), 29 U.S.C. §§ 1053(a), 1054(c)(3), and 1055(a)-(d).

J. Surcharge from Defendants totaling the amounts owed to participants and/or the amount of unjust enrichment obtained by Defendants as a result of the violations of ERISA §§ 203(a), 204(c)(3), and 205(a)-(d), 29 U.S.C. §§ 1053(a), 1054(c)(3), and 1055(a)-(d).

K. An order estopping Defendants from applying to the Classes the Joint and Survivor Annuities Reduction Factors that violate ERISA §§ 203(a), 204(c)(3), and 205(a)-(d), 29 U.S.C. §§ 1053(a), 1054(c)(3), and 1055(a)-(d) and requiring Defendants instead to pay benefits in accordance with ERISA §§ 203(a), 204(c)(3), and 205(a)-(d), 29 U.S.C. §§ 1053(a), 1054(c)(3), and 1055(a)-(d) .

L. Relief to the Plan from AT&T Services for its violations of ERISA § 404, 29 U.S.C. § 1104, including a declaration that the Joint and Survivor Annuities Reduction Factors contained in the Plan violate ERISA §§ 203(a), 204(c)(3), and 205(a)-(d), 29 U.S.C. §§ 1053(a), 1054(c)(3), and 1055(a)-(d); restoration of losses to the Plan and its participants caused by AT&T Services' fiduciary violations; disgorgement of any benefits and profits AT&T Services received or enjoyed from the use of the Plan's assets or violations of ERISA; surcharge; payment to the Plan of the amounts owed to Class members caused by fiduciary breach so that those amounts owed can be provided to Plan participants; and all appropriate injunctive relief, such as an order requiring AT&T Services to pay all Plan participants fully ERISA-compliant benefits in the future and to ensure that all benefits it pays to participants conform to the requirements set forth in ERISA §§ 203(a), 204(c)(3), and 205(a)-(d), 29 U.S.C. §§ 1053(a), 1054(c)(3), and 1055(a)-(d).

M.  An award of pre-judgment interest on any amounts awarded to Plaintiffs pursuant to law.

N.  An award of Plaintiffs' attorneys' fees, expenses and/or taxable costs, as provided by the common fund doctrine, ERISA § 502(g), 29 U.S.C. § 1132(g), and/or other applicable doctrine.

O.  An order awarding, declaring or otherwise providing Plaintiffs and the Classes any other appropriate equitable relief under ERISA § 502(a), 29 U.S.C. § 1132(a), or any other applicable law, that the Court deems just and proper.

Dated:  March 29, 2024

Respectfully submitted,

_/s/ Michelle C. Yau_
Michelle C. Yau (admitted *pro hac vice*)
Kai Richter (admitted *pro hac vice*)
Daniel J. Sutter (admitted *pro hac vice*)
Caroline E. Bressman (admitted *pro hac vice*)
Cohen Milstein Sellers & Toll PLLC
1100 New York Ave. NW ● Fifth Floor
Washington, DC 20005
Telephone: (202) 408-4600
Fax: (202) 408-4699
myau@cohenmilstein.com
krichter@cohenmilstein.com
dsutter@cohenmilstein.com
cbressman@cohenmilstein.com

Todd Jackson (Cal. Bar No. 202598)
Nina Wasow (Cal. Bar No. 242047)
FEINBERG, JACKSON, WORTHMAN & WASOW, LLP
2030 Addison Street ● Suite 500
Berkeley, CA 94704
Telephone: (510) 269-7998
Fax: (510) 269-7994
todd@feinbergjackson.com
nina@feinbergjackson.com

Peter K. Stris (Cal. Bar No. 216226)
Rachana A. Pathak (Cal. Bar No. 218521)
Victor O'Connell (Cal. Bar No. 288094)
John Stokes (Cal. Bar No. 310847)
STRIS & MAHER LLP

777 S. Figueroa St. ● Suite 3850
Los Angeles, CA 90017
Telephone: (213) 995-6800
Fax: (213) 261-0299

Shaun P. Martin (Cal. Bar No. 158480)
University of San Diego Law School
5998 Alcala Park ● Warren Hall
San Diego, CA 92110
Telephone: (619) 260-2347
Fax: (619) 260-7933

***Attorneys for Plaintiffs***