UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TIMOTHY SCOTT, et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>AT&T INC., et al.,<br><br>    Defendants. | Case No. 20-cv-07094-JD<br><br>**ORDER RE IAN ALTMAN'S EXPERT OPINIONS** |

The basics about this putative class action against defendants AT&T Inc., the AT&T Defined Benefit Plan, and AT&T Services, Inc. (collectively AT&T) are stated in the summary judgment order and incorporated herein. Dkt. No. 245. AT&T asks to exclude the opinions of plaintiff's proffered expert, Ian Altman, under Federal Rule of Evidence 702 and related cases in connection with class certification and summary judgment proceedings. Dkt. Nos. 122, 154. The parties' familiarity with the record is assumed. The request to exclude is denied.

## BACKGROUND

Plaintiffs and AT&T filed a number of dueling expert reports and supplemental reports in connection with motions for class certification and summary judgment. *See* Dkt. Nos. 119-8, 119-9, 119-10, 121-4. To cut to the essentials, the Court convened a concurrent expert evidentiary proceeding to hear directly from Altman and AT&T's rebuttal expert, Jack Abraham, about why Altman's opinions might be so deficient as to warrant exclusion. Dkt. No. 205. During the proceeding, Altman and Abraham exchanged detailed comments and analyses of Altman's methodology and reasoning. *See generally* Dkt. No. 231. The Court directed the experts to "confer in-person . . . to discuss the AT&T data sets and any disputes about completeness and the like." Dkt. No. 230; *see also* Dkt. No. 231 at 45:16-46:1, 57:20-21. Based on the experts'

subsequent meet and confer, Altman updated his data set and filed a second supplemental report, and Abraham filed a supplemental rebuttal report. Dkt. Nos. 235, 237-2, 237-3.

The Court also directed AT&T to back up its suggestion that Altman had "screwed this whole thing up" by filing a statement identifying the individuals who would be deemed beneficiaries under Altman's approach. Dkt. No. 231 at 55:15-22; *see also* Dkt. No. 230. AT&T took this, wrongly, as an invitation to stuff the docket with materials far beyond the Court's order, including wholly extraneous and unauthorized arguments with plaintiffs' theory of the case and Altman's methodology. Dkt. No. 234. The statement went so far as to comment on commonality under Federal Rule of Civil Procedure 23(a) with respect to every putative class member. *See id.* at 12-14.

This effort to lard the record was in violation of the Court's order. *See* Dkt. No. 231 at 56:6 ("[D]on't reargue anything else."). Exhibits C and E through X to Dkt. No. 234 are stricken from the docket. All arguments and statements made in connection with the exhibits in AT&T's statement and Abraham's January 31, 2025 declaration, Dkt. Nos. 234, 234-27, are also stricken from the record and will be disregarded. The Court resolves the requests to exclude Altman's opinions based solely on the FRE 702 proceedings, briefing, and the experts' original and supplemental reports.

## DISCUSSION

Federal Rule of Evidence 702 provides that a "witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that," *inter alia*, "the testimony is based on sufficient facts or data," "is the product of reliable principles and methods," and "reflects a reliable application of the principles and methods to the facts of the case." Fed. R. Evid. 702(b)-(d). Under the familiar standards of FRE 702 and *Daubert v. Merrell Dow Pharma., Inc.*, 509 U.S. 579 (1993), "[t]he test of reliability is flexible." *Reflex Media, Inc. v. SuccessfulMatch.com*, 758 F. Supp. 3d 1046, 1049 (N.D. Cal. 2024) (citation omitted). There is "less danger that a trial court will be 'unduly impressed by the expert's testimony or opinion' in a

bench trial." *In re San Benito Health Care Dist.*, No. 24-cv-02266-JD, 2025 WL 885510, at *5 (N.D. Cal. Mar. 21, 2025) (quoting *FTC v. BurnLounge, Inc.*, 753 F.3d 878, 888 (9th Cir. 2014)).

Overall, AT&T did not demonstrate that Altman's opinions are "akin to predicting criminality by feeling bumps on a person's head." *Milan v. Clif Bar & Co.*, 340 F.R.D. 591, 601 (N.D. Cal. 2021) (citing *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 153 n.6 (1997) (Stevens, J., concurring in part)). AT&T says that Altman's opinions about the Plan's conversion factors' failure to achieve actuarially equivalent results is unreliable because his preferred methodology assertedly does not establish the "bottom" of the range of actuarially equivalent results, and the claim that his methodology is "conservative" rests on no more than *ipse dixit*. Dkt. Nos. 122 at 12-14; 154 at 8-12. AT&T again is "not seeing the forest through the trees." Dkt. No. 245 at 9. As detailed in the summary judgment order, Altman relies on his decades of experience and reliable evidence about industry practice to opine that the Plan's conversion factors do not generate actuarially equivalent JSA benefits because the underlying assumptions are outdated and unreasonable. *Id.* at 7-9; *see* Dkt. No. 231 at 5:24-7:8, 36:22-37:7; *see also* Dkt. Nos. 130 at 6-8; 169 at 6, 10. AT&T certainly may raise its concerns on cross-examination of Altman during the bench trial, but its objections do not rise to the level of warranting exclusion of Altman's opinions as junk science.

For Altman's methodology for calculating "damages,"[1] AT&T says there are several discrete mistakes that render his opinion unreliable. None of those objections warrant exclusion of Altman's opinions. Plaintiffs emphasize guidance in the Actuarial Standards of Practice (ASOP), published by the Society of Actuaries, that provides that an actuary may apply "judgmental adjustments or assumptions" where "accurate and complete [data] may not be available" so long as the use of such adjustments or assumptions is disclosed. Actuarial Standards Board, ASOP No. 23: Data Quality § 3.4(c) (effective date Apr. 30, 2017); *see* Dkt. Nos. 154 at 9 n.5; 169 at 11.

---

[1] "Damages" are not available under ERISA. *See Bast v. Prudential Ins. Co. of Am.*, 150 F.3d 1003, 1009 (9th Cir. 1998). However, "the mere payment of money" does not mean a particular remedy is barred, *Mathews v. Chevron Corp.*, 362 F.3d 1172, 1186 (9th Cir. 2004), and the statute permits participants to sue to "recover benefits due to [them] under the terms of [their] plan," 29 U.S.C. § 1132(a)(1)(B). The Court uses the term "damages" solely because the parties do so in their motion papers. *See, e.g.*, Dkt. Nos. 153, 169.

Altman adequately explained and disclosed the adjustments and assumptions he made when dealing with what he reasonably believed to be deficient data, and AT&T did not demonstrate those assumptions were so outlandish that no reasonable actuary would make them. AT&T's objections to Altman's treatment of the data go to weight, not admissibility.

For the assumption that female spousal beneficiaries are about three years younger than the Plan participant in instances where AT&T's data did not include the spousal beneficiary's age, Dkt. Nos. 122 at 7; 154 at 13-14, Altman said that assumption was grounded in "common actuarial practice based on historical patterns," Dkt. No. 119-10 at 4, and plaintiffs adduced evidence that AT&T's own actuaries have employed the same assumption, *see* Dkt. No. 119-13. To the extent AT&T says the assumption is appropriate only in the pension-funding context but not the individual-benefits context, the Court may consider the question further if warranted by testimony at trial.

Altman also assumed that a participant's listed beneficiary was his or her spouse even where he "didn't have independent confirmation that the beneficiary was the spouse." Dkt. No. 122 at 6. Altman explained that for most of AT&T's records, "the beneficiary was the spouse," but for a few thousand there either was no information, the beneficiary was not a spouse, or there was a "NP" notation. Dkt. No. 122-6 at 47:7-20. After excluding the non-spouses, Altman inquired with AT&T what "NP" meant and was told "they didn't know." *Id.* at 47:15-23. He then assumed the beneficiary was a spouse where there was no information or a "NP" notation because, for most of the "over 30,000 records where it was listed . . . the beneficiary was the spouse." *Id.* at 47:7-25. The assumption was based on sufficient facts or data, and objections to it go to weight, not admissibility. *See, e.g.*, *Klein v. Meta Platforms, Inc.*, 766 F. Supp. 3d 956, 967 (N.D. Cal. 2025) ("[C]ourts should 'not exclude opinions merely because they are impeachable.'" (citation omitted)); *see also City of Pomona v. SQM North Am. Corp.*, 750 F.3d 1036, 1049 (9th Cir. 2014) ("[T]rained experts commonly extrapolate from existing data." (citation omitted)).

In instances where AT&T's "record keeper data did not include the JSA Conversion Factor used," Altman used an "implied" factor for calculating individual participants' damages. Dkt. No. 122 at 8; *see* Dkt. No. 154 at 13. He generated this "implied" factor, which sometimes

4

differed from the factors provided for in the Plan documents, by "dividing a participant's JSA benefit by the accrued benefit" (i.e., the SLA payable at normal retirement age), as those benefit amounts were documented in AT&T's records. Dkt. No. 122 at 8. AT&T does not object to Altman's reverse engineering of the conversion factors as a categorical matter or on the ground that his method is mathematically incorrect for computing unlisted conversion factors for individual participants. Rather, AT&T says that, because some participants' JSA benefits reflected not only the application of a JSA conversion factor but also either an "early retirement reduction" or a "pop-up benefit," Altman's calculation of an implied factor in the absence of data in AT&T's records was unreliable for such individuals. *Id.* at 9; Dkt. No. 154 at 5.

Neither point is well taken. The accusation that Altman disregarded the pop-up benefit is baseless, as he performed two sets of damages calculations, one that factored in the pop-up benefit and one that did not. *See* Dkt. No. 119-8 at 31-34. Altman also explained why, based on his experience, the pop-up benefit should not be considered, because it is a benefit separate from the JSA benefit that offers "no value to the surviving beneficiary." *Id.* at 33. This objection plainly goes to weight. *See, e.g.*, *Elosu v. Middlefork Ranch Inc.*, 26 F.4th 1017, 1028-29 (9th Cir. 2022) (objections based on experts' "competing interpretations" of the evidence not a basis for exclusion). In response to questions about the early retirement benefit, Altman explained his conclusion that AT&T's records *already* reflected accrued and JSA benefit amounts that factored in the early retirement benefit, based on the numbers AT&T had produced. *See* Dkt. No. 122-6 at 150:12-153:17. The implied conversion calculation would therefore not reflect a bias, said Altman, because the early retirement reduction is reflected in both the numerator and the denominator. *See id.* The possibility that AT&T may have inconsistently recorded participant data does not render his methodology unreliable and instead furnishes grist for cross examination. *See Primiano v. Cook*, 598 F.3d 558, 564 (9th Cir. 2010). After the expert meet and confer, the experts agreed the implied factor calculation did not include the early retirement benefit and so was incorrect for some participants, *see* Dkt. Nos. 234 at 3; 234-2; 236 at 2, but prior erroneous calculations for a small number of participants, out of nearly 40,000 relevant participants, does not furnish a basis for deeming Altman's opinions unreliable.

AT&T's final objection goes to Altman's inclusion of participants who received benefits in the form of both a partial lump sum and JSA is not grounds for exclusion, as the contention at bottom is not about his methodology's reliability but about whether the resultant JSA benefits are "qualified" or subject to the statutory actuarial equivalency requirement despite the partial lump sum election. *See* Dkt. Nos. 122 at 8; 154 at 14; 130 at 12; 169 at 13.  That dispute is properly viewed as bearing on the merits of plaintiffs' claims with respect to those putative class members and so does not demonstrate a lack of reliability in Altman's opinions.  To the extent those participants are later determined to be uninjured for the reasons AT&T advances, they may easily be culled from Altman's calculations.

## CONCLUSION

The record overall indicates that Altman's opinions are grounded in evidence and sound actuarial methods and therefore will be put through the crucible of vigorous cross examination at trial.  The request to exclude his opinions under FRE 702 and related cases is denied without prejudice to renewal at trial as to specific calculations, as the evidence and circumstances warrant.

**IT IS SO ORDERED.**

Dated: July 9, 2025

JAMES DONATO
United States District Judge