Michelle C. Yau (*Pro Hac Vice*)
Daniel R. Sutter (*Pro Hac Vice*)
Caroline E. Bressman (*Pro Hac Vice*)
COHEN MILSTEIN SELLERS & TOLL PLLC
1100 New York Ave. NW ● Suite 800
Washington, DC 20005
Telephone: (202) 408-4600
Fax: (202) 408-4699

Kai H. Richter (*Pro Hac Vice*)
COHEN MILSTEIN SELLERS & TOLL
PLLC
400 South 4th Street #401-27
Minneapolis, MN 55415
Telephone: (612) 807-1575
Fax: (202) 408-4699

Peter K. Stris (Cal. Bar No. 216226)
Victor O'Connell (Cal. Bar No. 288094)
John Stokes (Cal. Bar No. 310847)
Colleen R. Smith (*Pro Hac Vice*)
STRIS & MAHER LLP
17785 Center Court Dr N, Suite 600
Cerritos, CA 90703
Telephone: (213) 995-6800
Fax: (213) 261-0299

Rachana A. Pathak (Cal. Bar No. 218521)
STRIS & MAHER LLP
17785 Center Court Dr N, Suite 600
Cerritos, CA 90703
T: (213) 995-6800 | F: (213) 261-0299

Todd Jackson (Cal. Bar No. 202598)
Nina Wasow (Cal. Bar No. 242047)
FEINBERG, JACKSON, WORTHMAN &
WASOW, LLP
2030 Addison Street ● Suite 500
Berkeley, CA 94704
Telephone: (510) 269-7998
Fax: (510) 269-7994

Shaun P. Martin (Cal. Bar No. 158480)
5998 Alcala Park ● Warren Hall
San Diego, CA 92110
Telephone: (619) 260-2347
Fax: (619) 260-7933

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Timothy Scott, Patricia Gilchrist, Karen Fisher, Helen Maldonado-Valtierra, John Griffin, Kenneth Rhodes, Judy Dougherty, John Kelly, Richard Walshon, Dan Koval, Jennifer Fryer, and Vince Carabba, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>AT&T Inc., AT&T Services, Inc. and the AT&T Pension Benefit Plan,<br><br>Defendants. | Case No. 3:20-cv-07094-JD<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT AND CERTIFICATION OF SETTLEMENT CLASS**<br><br>Date: August 13, 2026<br>Time: 11:00 a.m.<br>Courtroom 11<br><br>Hon. James Donato |

MOT. FOR PRELIMINARY APPROVAL OF SETTLEMENT AND CERTIFICATION OF SETTLEMENT CLASS

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE THAT on August 13, 2026 at 11 a.m., in Courtroom 11 of the San Francisco Division of the United States District Court, Northern District of California, 450 Golden Gate Avenue, San Francisco, California, Plaintiffs Timothy Scott, Patricia Gilchrist, Karen Fisher, Helen Maldonado-Valtierra, John Griffin, Kenneth Rhodes, Judy Dougherty, John Kelly, Richard Walshon, Dan Koval, Jennifer Fryer, and Vince Carabba ("Plaintiffs") will move, and hereby do move, the Court to enter an order under Rule 23 of the Federal Rules of Civil Procedure:

1.    Preliminarily approving the Settlement Agreement between Plaintiffs and Defendants as fair, reasonable, and adequate under Rule 23(e) of the Federal Rules of Civil Procedure;

2.    Certifying the Settlement Class and SubClasses under Federal Rule of Civil Procedure 23(a) and 23(b) set forth in the Settlement.

3.    Approving the proposed Class Settlement notice as to form and content and the plan for dissemination of notice to the Class as satisfying the requirements of Rule 23(c)(2) and (e)(1);

4.    Appointing Atticus as the Settlement Administrator;

5.    Setting the date and time for the Fairness Hearing; and

6.    Setting dates and deadlines under Rule 23(d) and (e) of the Federal Rules of Civil Procedure in order for the Court to evaluate whether the settlement should be given final approval (after distribution of the proposed class notice to the Class and submission of any objections to the settlement) and to evaluate Plaintiffs' Counsel's request for an award of attorneys' fees and reimbursement of costs and expenses and Plaintiffs' request for class representative service awards as follows:

| | |
|---|---|
| Deadline for service of CAFA notices | July 19, 2026 |
| Deadline for Defendants to provide Settlement Administrator and Class Counsel data for class notice distribution | July 30, 2026 |
| Deadline to establish Settlement website | Entry of Preliminary Approval + 21 days |
| Deadline to distribute Class Notice | Entry of Preliminary Approval + 45 days & |

| | 60 days before objection deadline |
|---|---|
| Deadline for Motion for Attorneys' Fees, Costs and Service Awards | 42 days before Fairness Hearing |
| Deadline for Independent Fiduciary Determination | 28 days before Fairness Hearing |
| Deadline for Objections and Notices of Intention to Appear at Fairness Hearing | 21 days before Fairness Hearing |
| Deadline for Motion for Final Approval | 14 days before Fairness Hearing |
| Deadline for Defendants to provide Data for Allocation | Effective Date + 14 days |
| Deadline to adopt the Plan Amendment with new JSA factors | Effective Date + 60 days |
| Distribution of Payments to Retired SubClass Members | Effective Date + 90 days |
| Deadline to complete and file Post Distribution Accounting | Expiration of Re-distribution Payments or Transfer to Unclaimed Property Fund + 21 days |

This Motion is supported by the accompanying Memorandum of Law, the Declaration of Nina Wasow ("Wasow Decl."), the Declaration of Michelle Yau ("Yau Decl."), the Declaration of Peter Stris ("Stris Decl."), the Declaration of Ian Altman ("Altman Decl."), Defense Counsel's Declaration, Plaintiffs' Declarations, and the Proposed Order filed herewith, all of the pleadings and documents on file with the Court in this action, and further evidence and argument as may be submitted prior to the Court's decision on this motion.

Dated: July 9, 2026                    Respectfully submitted,

                                       /s/ Nina Wasow
                                       Todd Jackson (Cal. Bar No. 202598)
                                       Nina Wasow (Cal. Bar No. 242047)
                                       FEINBERG, JACKSON, WORTHMAN & WASOW, LLP
                                       2030 Addison Street, Suite 500
                                       Berkeley, CA 94704
                                       Telephone: (510) 269-7998
                                       Fax: (510) 269-7994
                                       todd@feinbergjackson.com
                                       nina@feinbergjackson.com

                                       Michelle C. Yau (admitted *pro hac vice*)

Kai Richter (admitted *pro hac vice*)
Daniel J. Sutter (admitted *pro hac vice*)
Caroline Bressman (*Pro Hac Vice*)
COHEN MILSTEIN SELLERS & TOLL PLLC
1100 New York Ave. NW ● Suite 800
Washington, DC 20005
Telephone: (202) 408-4600
Fax: (202) 408-4699
myau@cohenmilstein.com
krichter@cohenmilstein.com
dsutter@cohenmilstein.com
cbressman@cohenmilstein.com

Rachana A. Pathak (Cal. Bar No. 218521)
STRIS & MAHER LLP
777 S. Figueroa St. ● Suite 3850
Los Angeles, CA 90017
Telephone: (213) 995-6800
Fax: (213) 261-0299
rpathak@stris.com

Shaun P. Martin (Cal. Bar No. 158480)
5998 Alcala Park ● Warren Hall
San Diego, CA 92110
Telephone: (619) 260-2347
Fax: (619) 260-7933
smartin@sandiego.edu

*Attorneys for Plaintiffs*

**TABLE OF CONTENTS**

I.      INTRODUCTION ........................................................................................................1

II.     FACTUAL AND PROCEDURAL BACKGROUND .......................................................2

III.    PROPOSED SETTLEMENT .........................................................................................5

       A.     The Proposed Settlement Class and SubClasses ............................................5

       C.     Release of Claims ...........................................................................................6

       D.     Notice Program ...............................................................................................6

       E.     Attorneys' Fees and Costs, and Class Representative Service Awards .....................7

IV.    THE SETTLEMENT WARRANTS PRELIMINARY APPROVAL ..................................8

       A.     Plaintiffs and Their Counsel Adequately Represented the Class. ..................8

       B.     The Parties Negotiated the Settlement at Arm's Length After Full Discovery and Summary Judgment Motion Practice. ...................................9

       C.     The Settlement is Reasonable in Light of the Risks of Continued Litigation. ......................................................................................................10

       D.     The Settlement Grants No Preferential Treatment to Any Class Members. ......................................................................................................15

       E.     The Settlement Satisfies the Remaining Factors Set Forth in the Northern District's Procedural Guidance. .....................................................16

V.     CERTIFICATION OF THE CLASS AND SUBCLASSES IS APPROPRIATE. ...............21

       A.     The Proposed Class and SubClasses Satisfy the Requirements of Rule 23(a). ...............................................................................................................22

       B.     The Settlement Class Meets the Requirements of Rule 23(b)(1) and (b)(2). .............................................................................................................24

VI.    CONCLUSION ...........................................................................................................25

# TABLE OF AUTHORITIES

**Cases**                                                                                                                        **Page(s)**

*Anderson-Butler v. Charming Charlie Inc.*,
  2015 WL 4599420 (E.D. Cal. July 29, 2015)................................................................... 23

*B.K. by next friend Tinsley v. Snyder*,
  922 F.3d 957 (9th Cir. 2019) ........................................................................................ 29

*Belknap v. Partners Healthcare Sys., Inc.*,
  588 F. Supp. 3d 161 (D. Mass. 2022)..............................................................................11

*Berkeley v. Intel Corporation*,
  2026 WL 948725 (N.D. Cal. Apr. 8, 2026) ................................................................... 12

*Berube v. Rockwell Auto*,
  (E.D. Wis. Mar. 8, 2024) .............................................................................................. 16

*Campbell v. Facebook, Inc.*,
  951 F.3d 1106 (9th Cir. 2020) ........................................................................................ 8

*De Leon v. Ricoh USA, Inc.*,
  2019 WL 6311379 (N.D. Cal. Nov. 25, 2019) ............................................................... 9

*Evon v. Law Offices of Sidney Mickell*,
  688 F.3d 1015 (9th Cir. 2012) ...................................................................................... 26

*Franklin v. Duke Univ.*,
  2026 WL 191142 (M.D.N.C. Jan. 26, 2026)................................................................. 16

*Hanlon v. Chrysler Corp.*,
  150 F.3d 1011 (9th Cir. 1998) ................................................................................. 26, 28

*Hefler v. Wells Fargo & Co.*,
  2018 WL 6619983 (N.D. Cal. Dec. 18, 2018) .............................................................. 20

*Hernandez v. Cty. of Monterey*,
  305 F.R.D. 132 (N.D. Cal. 2015) .................................................................................. 25

*Herndon v. Huntington*,
  (E.D. Va. May 10, 2022) .............................................................................................. 16

*Hesse v. Sprint Corp.*,
  598 F.3d 581 (9th Cir. 2010) ........................................................................................ 18

*In re Facebook Biometric Info. Priv. Litig.*,
  522 F. Supp. 3d 617 (N.D. Cal. 2021),
  *aff'd*, 2022 WL 822923 (9th Cir. Mar. 17, 2022).................................................... 14, 23

MOT. FOR PRELIMINARY APPROVAL OF SETTLEMENT AND CERTIFICATION OF SETTLEMENT CLASS

*In re Facebook Biometric Info. Privacy Litig.*,
   2020 WL 4818608 (N.D. Cal. Aug. 19, 2020) .............................................................. 9, 10

*In re Hyundai & Kia Fuel Econ. Litig.*,
   926 F.3d 539 (9th Cir. 2019) ..................................................................................... 24, 25

*In re Lithium Ion Batteries Antitrust Litig.*,
   2020 WL 7264559 (N.D. Cal. Dec. 10, 2020),
   *aff'd*, 2022 WL 16959377 (9th Cir. Nov. 16, 2022) ........................................................ 21

*In re Nexus 6P Prods. Liab. Litig.*,
   2019 WL 6622842 (N.D. Cal. Nov. 12, 2019) ................................................................. 20

*In re Syncor ERISA Litig.*,
   516 F.3d 1095 (9th Cir. 2008) ......................................................................................... 8

*J.L. v. Cissna*,
   2019 WL 415579, (N.D. Cal. Feb. 1, 2019) ................................................................... 26

*Johnson v. Meriter Health Servs. Emp. Ret. Plan*,
   2015 WL 13546111 (W.D. Wis. Jan. 5, 2015) ................................................................ 21

*Johnson v. Serenity Transportation, Inc.*,
   2021 WL 3081091 (N.D. Cal. July 21, 2021) ................................................................. 11

*Kanawi v. Bechtel Corp.*,
   254 F.R.D. 102 (N.D. Cal. 2008) .................................................................................... 28

*Lab. Corp. of Am. Holdings v. Davis*,
   605 U.S. 327 (2025) ........................................................................................................ 17

*McFadden v. Sprint Commc'ns, LLC*,
   2024 WL 1533897 (D. Kan. Apr. 9, 2024) ...................................................................... 11

*McFadden v. Sprint*,
   (D. Kan. Aug. 21, 2024) .................................................................................................. 16

*Norris v. Mazzola*,
   2017 WL 6493091 (N.D. Cal. Dec. 19, 2017) ................................................................ 28

*Norton v. LVNV Funding, LLC*,
   2021 WL 3129568 (N.D. Cal. July 23, 2021) ................................................................. 10

*Peters v. Nat'l R.R. Passenger Corp.*,
   966 F.2d 1483 (D.C. Cir. 1992) ...................................................................................... 19

*Rodriguez v. Hayes*,
   591 F.3d 1105 (9th Cir. 2010) .............................................................................. 26, 27, 29

MOT. FOR PRELIMINARY APPROVAL OF SETTLEMENT AND CERTIFICATION OF SETTLEMENT CLASS

*Rollins v. Dignity Health*,
   2021 WL 8154953 (N.D. Cal. Oct. 19, 2021) ................................................................. 28

*Sali v. Corona Reg'l Med. Ctr.*,
   909 F.3d 996 (9th Cir. 2018) ........................................................................................... 27

*Urlaub v. CITGO*,
   (N.C. Ill. Jan. 27, 2025) ................................................................................................... 14

*Vasquez v. USM Inc.*,
   2015 WL 12857082 (N.D. Cal. Apr. 13, 2015) .................................................................. 8

*Wal-Mart Stores, Inc. v. Dukes*,
   564 U.S. 338 (2011) ......................................................................................................... 25

**Federal Statutes**
26 U.S.C. § 417(e).......................................................................................... 5, 12, 15, 17
28 U.S.C. § 1711–1715 ........................................................................................................ 7
29 U.S.C. § 1053(a)............................................................................................................. 2
29 U.S.C. § 1054(c)............................................................................................................. 2
29 U.S.C. § 1055(d)(1)(B) ................................................................................................... 2
29 U.S.C. §§ 205, 203(a)................................................................................................... 29

**Other Authorities**
Certification Notice, Manual Complex Lit. § 21.311 (4th ed.) ......................................... 20
William B. Rubenstein, et al., Newberg and Rubenstein on Class Actions § 13:10 (5th ed. 2013).. 8

**Rules**
Fed. R. Civ. P. 23(b) ................................................................................................. *passim*
Fed. R. Civ. P. 23(g) ......................................................................................................... 28
Fed. R. Civ. P. Rule 23(a) ................................................................................. 24, 25, 26, 27
Fed. R. Civ. P. Rule 23(e) .......................................................................................... *passim*

## I.    INTRODUCTION

After nearly six years of contentious litigation, Plaintiffs and Defendants have agreed to a proposed class action settlement.[1] The proposed Settlement provides more than $149 million in value to Class members in the AT&T Pension Benefit Plan (the "Plan").

Under the terms of the proposed Settlement, Defendants have agreed to: (1) pay $113.5 million in additional pension benefits to the Retired SubClass, less settlement administration expenses; (2) amend the Plan's joint and survivor annuity ("JSA") factors to provide an estimated $35.6 million in additional benefits to the Pre-Retirement Subclass; (3) review the Plan's JSA factors at least once every ten years to ensure that they continue to comply with ERISA; and (4) separately pay the Class's attorneys' fees and expenses of up to $35 million, subject to the approval of the Court. Importantly, any attorneys' fees and costs awarded by the Court will not reduce the monetary benefits to the Class.

The Settlement was reached after the parties completed fact and expert discovery, and Plaintiffs had developed a detailed understanding of the strengths and risks of their claims. It is also the product of three mediation sessions spanning years of arm's-length negotiations overseen by an experienced JAMS mediator, Robert Meyer.

The Settlement will deliver relief directly and efficiently to Class members. Current retirees will automatically receive their Settlement payments via the same method they receive their current pension benefits, and future retirees will automatically receive the benefit of the amended JSA factors when they retire. No claim forms will be required, and no Class member will need to take any action to receive the monetary benefits provided by the Settlement. The Settlement thus provides substantial and immediate relief to Class members, avoids the significant risks, expense, and delay associated with continued litigation, and constitutes a fair, reasonable, and adequate resolution of this action. Plaintiffs therefore respectfully request that the Court grant preliminary approval of the Settlement, certify the proposed Settlement Class and SubClasses, approve the proposed Notice of Settlement, and schedule a Final Approval Hearing.

---

[1] Unless otherwise defined, all capitalized terms herein have the same meaning as set forth in the Parties' Settlement Agreement.  Ex. 1 to Yau Declaration.

1

Case No. 3:20-cv-07094-JD

## II.    FACTUAL AND PROCEDURAL BACKGROUND

This case challenges the method by which the AT&T Pension Plan (the "Plan") calculates Joint and Survivor Annuity ("JSA") benefits. Plaintiffs allege that the Plan uses static JSA "conversion factors" adopted in 1984 and based on a 1971 Group Annuity Mortality table to convert Single Life Annuity ("SLA") benefits into JSA form. According to Plaintiffs, these factors rely on mortality and interest assumptions that are now decades out of date. Plaintiffs allege that the outdated factors produce JSA benefits that are not actuarially equivalent to SLA benefits, in violation of 29 U.S.C. §§ 1054(c)(3) and 1055(d)(1)(B), and thereby cause a forfeiture of vested benefits in violation of 29 U.S.C. § 1053(a). Defendants deny Plaintiffs' allegations, maintain that the Plan has complied with ERISA at all times, and have vigorously defended their position during the litigation.

This case was litigated nearly to trial. The parties engaged in extensive fact and expert discovery, including the production and review of voluminous documents, numerous fact and expert depositions, multiple discovery disputes and motions, class-certification proceedings, *Daubert* motions, summary-judgment briefing, supplemental expert reports, and a concurrent expert evidentiary ("hot tub") proceeding before the Court. Yau Decl. ¶¶ 27–30. As a result, the parties possess a detailed understanding of the strengths and weaknesses of their respective positions and the risks associated with continued litigation.

Plaintiffs commenced this action on October 12, 2020. Dkt. 1. Defendants moved to transfer venue or dismiss the action, but the Court denied that motion. Dkts. 36, 47. Defendants answered the First Amended Complaint on May 24, 2021. Dkt. 52. Plaintiffs sought and obtained leave to file a Second Amended Complaint over Defendants' objections. Dkts. 67, 87. Defendants then filed a Partial Motion to Dismiss portions of the Second Amended Complaint while answering the remaining allegations. Dkts. 99, 100. The Court denied that motion. Dkt. 120.

Over the next several years, the parties engaged in full fact and expert discovery. Yau Decl. ¶¶ 27–29. Plaintiffs served five sets of document requests and six sets of interrogatories on Defendants and third parties. *Id*. at ¶ 27. The parties produced and reviewed substantial volumes of documents, conducted numerous depositions, and litigated multiple discovery disputes before the Court. *See id*. and Dkts. 72, 80, 86, 96, 98, 109.

On August 22, 2022, Plaintiffs moved for certification of two classes. Dkt. 119. The motion was supported by expert reports from actuary Ian Altman, declarations from counsel and Plaintiffs, and numerous exhibits. Dkts. 119-01 through 119-24. Defendants opposed class certification and moved to exclude Mr. Altman's testimony under Federal Rule of Evidence 702. Dkt. 122. At the class certification hearing, the Court questioned whether a single class under Rule 23(b)(2) would be appropriate. Dkt. 181 at 5. Consistent with the Court's guidance, Plaintiffs subsequently notified the Court of their intent to seek certification of a single Injunction/Equitable Relief Class together with two SubClasses. Dkt. 179.

The parties also engaged in substantial settlement efforts during the litigation. Yau Decl. ¶ 33. Following the initial full-day mediation session with Robert Meyer of JAMS in August 2021, the parties participated in a second full-day mediation in December 2022. *Id*. ¶¶ 34–35. The Court entered a stay pending mediation. Dkt. 138. The parties again did not settle following the December 2022 mediation, and the Court set the case for trial in November 2023. *Id*. Dkt. 149.

On March 9, 2023, Defendants filed a Motion to Exclude the expert testimony of another of Plaintiffs' experts, David Pratt (Dkt. 152), a Motion for Summary Judgment (Dkt. 153), and a second Motion to Exclude Ian Altman's Expert Opinion and Testimony (Dkt. 154), all of which were fully briefed. Shortly thereafter, Plaintiffs moved for leave to file a Third Amended Complaint, proposing to substitute Jennifer Fryer and Vince Carabba[2] as representatives for the Pre-Retirement SubClass after the prior representative (Karen Fisher) retired and commenced JSA benefits, which converted Ms. Fisher from a Pre-Retirement SubClass to a Retired SubClass member. Dkt. 161.

The parties also undertook substantial trial preparation. They exchanged trial exhibit lists and witness lists and prepared the Joint Pretrial Statement and Statement of Undisputed Facts. Plaintiffs prepared a Motion in Limine, their Trial Brief, their deposition designations, opening statement, direct examinations of the witnesses they intended to call at trial (including their expert Ian Altman) and some cross-examinations of defense witnesses. *See* Dkt. 187; Yau Decl. ¶ 30.

---

[2] Plaintiffs' Counsel learned in early 2026 that Mr. Carabba had taken a lump sum distribution of his pension benefit. Because Mr. Carabba is now retired, Plaintiffs do not seek to appoint him as a representative of the Pre-Retirement SubClass.

3                                    Case No. 3:20-cv-07094-JD

MOT. FOR PRELIMINARY APPROVAL OF SETTLEMENT AND CERTIFICATION OF SETTLEMENT CLASS

Defendants then sought to vacate the trial dates and pre-trial deadlines in light of the pending motions (Dkt. 185), which Plaintiffs opposed. Dkt. 187. The Court vacated the trial date and all other deadlines and ordered supplemental briefing on the Motion for Class Certification. Dkts. 190, 191. The Court then granted Plaintiffs' motion to file the Third Amended Complaint and terminated the pending dispositive and *Daubert* motions without prejudice, directing the parties to file a joint statement on whether the motions could be decided as submitted. Dkt. 195. Plaintiffs filed the operative Third Amended Complaint (Dkt. 197) and the parties filed the joint statement. Dkt. 202.

On July 16, 2024, the Court ordered a concurrent expert evidentiary proceeding—a "hot tub" hearing—to hear directly from Plaintiffs' expert Altman and Defendants' rebuttal expert Abraham regarding Altman's methodology and the disputes underlying the Rule 702 motions and class certification. Dkt. 205. The Court also permitted additional supplemental briefing on the Class Certification and Summary Judgment motions, which were submitted. Dkts. 216–20.

The hot tub hearing occurred on January 8, 2025. Dkt. 230. Following the hot tub, the Court directed the parties' experts to meet and confer on the issues raised. *Id*. Mr. Altman submitted a second supplemental report, and Mr. Abraham submitted a supplemental rebuttal report, and the parties filed supplemental briefs. Dkts. 234–236. Plaintiffs agreed to exclude from the Retired Class the individuals on Abraham's Exhibits A, B and D. Dkt. 236.

On July 9, 2025, the Court largely denied Defendants' Motion for Summary Judgment (dismissing only Plaintiffs' breach of fiduciary duty claim) and denied Defendants' Motions to Exclude Mr. Altman's opinions and testimony. Dkts. 245, 246. These rulings significantly clarified the merits issues remaining for trial.

The parties then notified the Court that they would engage in further settlement discussions and requested a stay of the litigation. Dkt. 248; *see also* Dkts. 249–252 (status reports requesting continued stay of the case). The parties participated in a third mediation session with Mr. Meyer on January 26, 2026, and continued negotiating for nearly three more months before reaching a settlement in principle. On April 17, 2026, the parties signed a written Term Sheet. Thereafter, the parties engaged in further negotiations culminating in the comprehensive Settlement Agreement that is the subject of this motion. Yau Decl. ¶ 38.

This history demonstrates that the proposed Settlement is the culmination of years of contested litigation, extensive discovery, class-certification proceedings, summary judgment and *Daubert* motions practice, a hot tub hearing, substantial trial preparation, and three mediation sessions before an experienced JAMS mediator. The procedural posture of the case provided the parties with a comprehensive understanding of the strengths and weaknesses of their respective positions and a reliable basis upon which to evaluate the fairness and adequacy of the Settlement.

## III.    PROPOSED SETTLEMENT

### A.  The Proposed Settlement Class and SubClasses

The Settlement Agreement defines the Class and SubClasses as follows:

**Injunction/Equitable Relief Class:** All Plan participants and their beneficiaries, excluding those participants and beneficiaries in the Mobility Program, the Mobility Bargained Program, and the DIRECTV Program, who are receiving a Joint and Survivor Annuity calculated pursuant to tabular factors set forth in the Plan, or who would receive a Joint and Survivor Annuity calculated pursuant to tabular factors set forth in the Plan upon electing a Joint and Survivor Annuity.

**Retired SubClass:** All Plan participants and their beneficiaries who are receiving a Joint and Survivor Annuity that is less than the value of their Single Life Annuity when converted to a Joint and Survivor Annuity using the interest rates and mortality tables set forth in 26 U.S.C. § 417(e) with an annual stability period and November lookback month, based on the participant's Benefit Payment Status on the date the Court enters the Final Approval Order and excluding those participants and beneficiaries in the Mobility Program, the Mobility Bargained Program, and the DIRECTV Program. This SubClass also shall exclude all persons identified in Exhibits A, B, and D to the Declaration of Jack Abraham dated January 31, 2025 (Dkts. 234-1, 234-2, and 234-4).

**Pre-Retirement SubClass:** All Plan participants and their beneficiaries who are not in Benefit Payment Status as of the date the Court enters the Final Approval Order and would receive a Joint and Survivor Annuity calculated pursuant to tabular factors set forth in the Plan upon electing a Joint and Survivor Annuity, excluding those participants and beneficiaries in the Mobility Program, the Mobility Bargained Program, and the DIRECTV Program.

Settlement § I.K.

### B.  Settlement Terms

The Settlement provides substantial monetary and prospective relief to Class members. Specifically, it provides: (i) payments totaling $113.5 million to members of the Retired SubClass, less administrative expenses; (ii) a Plan Amendment which amends the JSA factors applicable to

members of the Pre-Retirement SubClass, with an estimated present value of $35.6 million; and (iii) AT&T's agreement to review the assumptions used to calculate JSAs at least once every ten years to ensure compliance with ERISA. Settlement §§ V.C, III.B, D.

### C. Release of Claims

In exchange for the substantial benefits provided by the Settlement, Plaintiffs and Settlement Class members will release Defendants and related parties from any claims that "were asserted in the Amended Complaint or that arise out of, relate to, are based upon, or otherwise share the same factual predicate or common nucleus of operative facts as those alleged in the Amended Complaint." *Id.* § I.GG. The release also encompasses claims relating to the calculation of Settlement payments to Retired SubClass members, the Plan amendment updating the JSA factors for Pre-Retirement SubClass members, claims that would be barred by *res judicata*, and the Independent Fiduciary's approval of the Settlement. *Id*. The Settlement Agreement sets forth the Released Claims and Released Parties in full. *Id.* §§ I.J, I.FF, and I.GG.

### D. Notice Program

The Settlement provides for a comprehensive notice program that satisfies the requirements of Rule 23 and due process. The Settlement Administrator will be responsible for administering all aspects of the notice program. Notice will be provided directly to all Class members through a postcard that provides the Settlement website, phone number, email, and a QR code linking to the website. Ex. 3 (Proposed Postcard Notice) to Yau Decl. The postcard notice will be mailed to Class members at their respective addresses as maintained by the Plan's recordkeeper. This method is particularly reliable because all Class members have vested pension benefits and maintain current contact information with the Plan's recordkeeper to receive Plan-related communications and benefits. In an abundance of caution, before sending the notices, the Settlement Administrator will update mailing addresses using the National Change of Address database and other commercially reasonable address-verification tools.

The proposed long-form notice will be available on the Settlement website identified on the postcard notice. The proposed long-form notice informs Class members of all material aspects of the Settlement, including: (1) the nature of the claims asserted; (2) the definition of the Class and

MOT. FOR PRELIMINARY APPROVAL OF SETTLEMENT AND CERTIFICATION OF SETTLEMENT CLASS

SubClasses; (3) the material terms of the Settlement; (4) Class members' right to object to the Settlement and the applicable deadline; (5) the scope of the Released Claims; (6) the identity of and contact information for Plaintiffs' Counsel and the attorneys' fees and expenses that may be sought; (7) the requested Class Representative service awards; (8) the date, time, and location of the Fairness Hearing; and (9) Class members' right to appear and be heard at the Fairness Hearing.[3] Ex. 2 (Proposed Long Form Class Notice) to Yau Decl.

The Settlement Website will provide Class members with access to key case documents, including the long-form Class notice, Settlement Agreement, operative complaint, Preliminary Approval Order, and Plaintiffs' motion for attorneys' fees, expenses, and service awards. *See* Settlement § II.B.4-5. The Settlement Administrator will also establish (i) a toll-free telephone line with live operators and (ii) an email address through which Class members may contact the Settlement Administrator directly. *Id*. If a mailed postcard notice is returned as undeliverable, the Settlement Administrator will, within fifteen (15) days of return receipt, use commercially reasonable means to identify a current address and re-mail the notice if an updated address is located. *Id*. at § II.B.3. Finally, the Settlement Administrator also will provide notice pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1711–1715.

### E. Attorneys' Fees and Costs, and Class Representative Service Awards

The Settlement Agreement contemplates that Plaintiffs' Counsel will request payment of attorneys' fees and litigation expenses, as well as Class Representative Service Awards. Settlement § IV.A. Defendants have agreed to pay Court-approved fees, expenses, and service awards, up to a maximum of $35 million. *Id.* §§ IV.A, C. Plaintiffs' Counsel has expended over 13,129.6 hours totaling $13,333,375 in lodestar in this litigation and has advanced approximately $809,111 in litigation expenses. Yau Decl. ¶¶ 42–44; Wasow Decl. ¶¶ 14, 16; Stris Decl. ¶¶ 24, 27.

The award of attorneys' fees, expenses, or service awards will be paid separately by Defendants and will not reduce or otherwise diminish the pension payments or other relief provided

---

[3] The Notice does not contain information regarding opting out of the Class because the Class is properly certified under Rule 23(b)(1).

to Class members under the Settlement. Settlement § I.E. Plaintiffs' Counsel will fully address the basis for attorneys' fees, litigation expenses, and service awards in their forthcoming motion.

### IV.    THE SETTLEMENT WARRANTS PRELIMINARY APPROVAL

"[T]here is a strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008); *Campbell v. Facebook, Inc.*, 951 F.3d 1106, 1121 (9th Cir. 2020) (same). Because Rule 23(e) requires court approval of any class settlement, the Court must conduct a preliminary review before directing notice to the class. Fed. R. Civ. P. 23(e).

Preliminary approval is not a dispositive assessment of the fairness of the proposed settlement; rather, preliminary approval assesses only whether the proposed settlement "falls within the range of possible approval." *Vasquez v. USM Inc.*, 2015 WL 12857082, at *2 (N.D. Cal. Apr. 13, 2015) (Donato, J.). The purpose of preliminary approval is to determine "whether to direct notice of the proposed settlement to the class, invite the class's reaction, and schedule a fairness hearing." William B. Rubenstein, et al., Newberg and Rubenstein on Class Actions § 13:10 (5th ed. 2013). "Preliminary approval of a class settlement is appropriate when the proposed settlement 'appears to be the product of serious, informed, noncollusive negotiations,' 'has no obvious deficiencies,' 'does not improperly grant preferential treatment to class representatives or segments of the class,' and 'falls with the range of possible approval.'" *In re Facebook Biometric Info. Privacy Litig.*, 2020 WL 4818608, at *2 (N.D. Cal. Aug. 19, 2020) (Donato, J.), (quoting *Stokes v. Interline Brands, Inc.*, 2014 WL 5826335, at *3 (N.D. Cal. Nov. 10, 2014)).

Here, the proposed Settlement readily satisfies the requirements for preliminary approval. As discussed below, it is the product of years of arm's-length litigation and negotiation, provides substantial monetary and prospective relief to the Class, contains no obvious deficiencies, treats Class members equitably, and falls comfortably within the range of possible approval.

### A.    Plaintiffs and Their Counsel Adequately Represented the Class.

This Settlement was reached after nearly six years of Plaintiffs' Counsel aggressively prosecuting this case. These efforts are described in detail *supra* at II. Plaintiffs also diligently fulfilled their responsibilities to the Class throughout the litigation as noted *infra* at IV.E.7.

Plaintiffs' Counsel are experienced ERISA class action litigators who have successfully prosecuted numerous complex ERISA cases on behalf of plan participants and beneficiaries. *See* Yau Decl. ¶¶ 5–25; Wasow Decl. ¶¶ 3, 5, 9–11; Stris Decl. ¶¶ 15, 17–22. The litigation efforts undertaken by Plaintiffs' Counsel and the active participation of Plaintiffs reflect adequate representation of the Class throughout this action. Rule 23(e)(2)(A) is satisfied.

**B.    The Parties Negotiated the Settlement at Arm's Length After Full Discovery and Summary Judgment Motion Practice.**

"To approve a proposed settlement, a court must be satisfied that the parties 'have engaged in sufficient investigation of the facts to enable the court to intelligently make . . . an appraisal of the settlement.'" *De Leon v. Ricoh USA, Inc.*, 2019 WL 6311379, at *10 (N.D. Cal. Nov. 25, 2019) (citation omitted).

Here, settlement was reached only after nearly six years of hard-fought litigation. Full fact and expert discovery were complete, yielding an extensive record. Yau Decl. ¶¶ 26–30. In addition, the parties engaged in class certification proceedings, multiple rounds of *Daubert* and summary judgment briefing, a concurrent expert evidentiary proceeding before the Court, and substantial trial preparation. The Court ultimately denied Defendants' motions to exclude Plaintiffs' actuarial expert and largely denied Defendants' motion for summary judgment, dismissing only Plaintiffs' breach of fiduciary duty claim. Dkts. 245, 246. The proceedings before the Court significantly clarified the issues that would have been presented at trial and further informed the parties' evaluation of the Settlement. As a result, Plaintiffs' Counsel thoroughly understood the strengths and weaknesses of Plaintiffs' claims and Defendants' defenses. *See also Norton v. LVNV Funding, LLC*, 2021 WL 3129568, at *7 (N.D. Cal. July 23, 2021) (reaching settlement after completing most discovery "suggests that the parties arrived at a compromise based on a full understanding of the legal and factual issues surrounding the case.") (citation omitted).

The Settlement is also the product of arm's-length negotiations. The parties participated in three full-day mediation sessions with experienced JAMS mediator Robert Meyer over the course of several years. Yau Decl. ¶¶ 33–38. Although the first two sessions did not result in a settlement, they narrowed the issues which facilitated subsequent negotiations. *Id*. ¶ 36. Even after reaching an

agreement in principle, the parties continued negotiating for many months in order to come to the Settlement Agreement now before the Court. *Id*. ¶¶ 37–38.

This litigation and negotiation history demonstrates that "the proposed settlement was the product of serious, informed and noncollusive negotiations" and weighs in favor of preliminary approval. *See In re Facebook Biometric Info.*, 2020 WL 4818608, at *3 (preliminarily approving settlement resulting from three rounds of mediation before neutral mediator).

**C.      The Settlement is Reasonable in Light of the Risks of Continued Litigation.**

In determining whether a proposed settlement falls within the range of possible approval, courts consider the strength of the plaintiffs' case, the risks of continued litigation, and the value of the relief obtained through settlement. *See Johnson v. Serenity Transportation, Inc.*, 2021 WL 3081091, at *5 (N.D. Cal. July 21, 2021) (quoting *In re Tableware Antitrust Litig.*, 484 F.Supp.2d 1078, 1080 (N.D. Cal. 2007)). Those considerations strongly support preliminary approval here. The proposed Settlement compares favorably both to the relief Plaintiffs reasonably could have expected to obtain through continued litigation and to settlements reached in comparable actuarial equivalence cases.

The Settlement provides more than $149 million in combined monetary and prospective relief to Class members, including $113.5 million in payments to members of the Retired SubClass, less modest administrative expenses (discussed below), and an amendment to the Plan's JSA factors for the Pre-Retirement SubClass, with an estimated present value of $35.6 million. The proposed Settlement compares very favorably with other settlements of actuarial equivalence cases in terms of the percentage recovered for retired participants. The Settlement further provides meaningful prospective relief in the form of AT&T's agreement to amend its JSA factors for future retirees and review those factors at least every ten years to ensure they continue to comply with ERISA.

Continued litigation would present substantial risks for all parties. Actuarial equivalence cases involve "serious questions of law and fact [], placing the ultimate outcome of the litigation in doubt." *McFadden v. Sprint Commc'ns, LLC*, 2024 WL 1533897, at *6 (D. Kan. Apr. 9, 2024). Other similar cases have been dismissed on the merits. *See, e.g., Belknap v. Partners Healthcare Sys., Inc.*, 588 F. Supp. 3d 161 (D. Mass. 2022). Most recently, another court in this District granted summary

judgment in favor of defendants in a similar actuarial equivalence case. *Berkeley v. Intel Corporation*, 2026 WL 948725, at *8 (N.D. Cal. Apr. 8, 2026). Contrary to this Court's decision at the motion to dismiss stage, the *Berkeley* court held that ERISA "does not require continuously updated 'reasonable' actuarial assumptions to convert SLAs to JSAs." *Id*. Although Plaintiffs strongly disagree with that decision, it underscores the uncertainty inherent in continued litigation and any subsequent appeal. Indeed, among the cases that advanced to discovery, none were tried.

Even if Plaintiffs ultimately prevailed on liability, significant disputes remained regarding damages and classwide relief. Trial would have involved a classic battle of experts concerning highly technical questions of mortality assumptions, interest rates, and actuarial equivalence. Additional disputes regarding statutes of limitations, damages methodologies, and class issues also remained. For example, Defendants argue that "there is no single 'correct' way to calculate actuarially equivalent JSA benefits" (Dkt. 153) and contend that other alternative actuarial assumptions produce substantially lower damages than the 417(e) methodology employed by Plaintiffs' actuarial expert. Defendants' Supplemental Brief, Dkt. 234 (Defendants' expert opined that only 713 retirees would have received less than the actuarially equivalent value of their benefits under his methodology, compared to more than 37,000 retirees under Plaintiffs' expert's 417(e) methodology). Thus, even if Plaintiffs established liability, Defendants vigorously dispute the proper measure of damages and the scope of any classwide recovery. Even a favorable judgment would almost certainly be followed by post-trial motions and appeals, delaying relief to Class members for years while introducing additional uncertainty.

In light of the substantial monetary and prospective relief obtained, the significant litigation risks that remain, and the delay and expense associated with continued litigation, the Settlement falls well within the range of possible approval and warrants preliminary approval.

1. <u>The Settlement provides substantial monetary relief for the Retired SubClass</u>.

The Settlement provides an excellent recovery for the Retired SubClass compared to the absolute value of other similar settlements. The $113.5 million recovery for the Retired SubClass exceeds every known settlement involving similar claims.

The recovery is also significant as a percentage of the Retired SubClass's estimated damages. Retirees within the alleged limitations period will recover 44% of the present value of their damages as compared to a median of 24% and average of 32.7% for claims within the limitations period in other settlements.[4] Moreover, this Settlement provides recovery for retirees who commenced their benefits outside of the statute of limitations period unlike nearly every comparable settlement. Those retirees (who retired before October 12, 2016) will recover approximately 15% of the present value of their damages as compared to a median recovery of 0% and average recovery of 2.9% for comparable claims outside the alleged statute of limitations period.[5]

Consistent with the Northern District's Procedural Guidance, the following chart compares the proposed Settlement to other settlements involving similar claims[6]:

| | % of Damages (Net) | | Total Recovery (Net) |
|---|---|---|---|
| | Within SOL period | Outside SOL period | |
| **Proposed AT&T Settlement[7]** | **44%** | **15%** | **$113.5 million[8]** |
| *Cruz v. Raytheon* (D. Mass) | 36% | 0% | $53.6 million |
| *McAlister v. MetLife* (S.D.N.Y.) | 21% (w/o interest) | 0% | $15.3 million |
| *Urlaub v. CITGO* (N.D. Ill.) | 87% | 20% | $10.0 million |
| *McFadden v. Sprint* (D. Kan) | 24% | 0% | $2.3 million |
| *Herndon v. Huntington* (E.D. Va.) | 22% | 0% | $1.8 million |
| *Franklin v. Duke Univ.* (M.D.N.C.) | 12% | 0% | $1.6 million |
| *Berube v. Rockwell Auto* (E.D. Wis.) | 27% | 0% | $0.4 million |

---

[4] Plaintiffs' expert calculated the present value of each Retired SubClass member's damages using the same methodology he applied in his expert report. Decl. of Ian Altman ¶¶ 2-5. Retired SubClass members who retired on/after October 12, 2016 will receive 44% of their damages. *Id*. ¶ 9.

[5] Retired SubClass members who retired before October 12, 2016 will receive payments of $74.3 million which is 15% of their damages of $508.0 million. Decl. of Ian Altman ¶ 9.

[6] The information on comparable settlements was based on Plaintiffs' Counsel's review of the approval orders and pleadings for the comparable settlements. Yau Decl. ¶ 46.

[7] The AT&T Plan is significantly larger than the plans involved in the other settlements, and differences in plan size, class size, damages models, limitations defenses, and settlement structures affect any comparison of aggregate settlement amounts.

[8] While no attorneys' fees and costs will be deducted from the $113.5 million recovery, an estimated $0.15 million for notice and distribution costs will be deducted from $113.5 million, which is accounted for in the recovery percentages shown.

MOT. FOR PRELIMINARY APPROVAL OF SETTLEMENT AND CERTIFICATION OF SETTLEMENT CLASS

| Median of Other Settlements | 24% | 0% | $2.3 million |
| Average of Other Settlements | 32.7% | 2.9% | $12.2 million |

The distribution of individual recoveries similarly demonstrates the reasonableness of the Settlement. As shown in the table below, 62% of Retired SubClass members will receive between $1,000 and $10,000. Decl. of Ian Altman ¶ 10. And a substantial number will receive even greater payments with 1,731 retirees receiving between $10,000 – $50,000 and some retirees receiving between $50,000 – $100,000. *Id.* These recoveries compare favorably to those approved in other class action settlements. *See, e.g.*, *Urlaub v. CITGO,* (N.C. Ill. Jan. 27, 2025) ECF No. 175 (finally approving settlement where 66% of class would receive between $1,000 and $10,000 in total payments); *In re Facebook Biometric Info. Priv. Litig.*, 522 F. Supp. 3d 617, 627 (N.D. Cal. 2021), *aff'd*, 2022 WL 822923 (9th Cir. Mar. 17, 2022) (approving settlement where individuals received at least $345 each).

| Range of Recoveries | # of Retired SubClass Members | Proportion of SubClass |
| --- | --- | --- |
| Less than $100 | 1,293 | 3.4% |
| $100 to $1,000 | 11,532 | 29.9% |
| $1,000 to $10,000 | 23,998 | 62.2% |
| $10,000 to $50,000 | 1,731 | 4.5% |
| $50,000 to $100,000 | 10 | 0.0% |
| **Total** | **38,564** | **100%** |

The Settlement also maximizes the practical value of the relief by requiring no action from Retired SubClass members. Payments will be made automatically through the same method by which retirees currently receive their pension benefits. Settlement § III.A.4. Because no claim forms or other administrative steps are required, the Settlement eliminates the claims-rate concerns that can arise in class settlements and ensures that virtually all the monetary relief will reach eligible retirees.

2. The relief provided to the Pre-Retirement SubClass reflects the full value of Plaintiffs' actuarial equivalence theory.

The relief obtained for the Pre-Retirement SubClass is particularly significant because the amended JSA conversion factors were not discounted to reflect litigation risk. Instead, the factors

13                                                     Case No. 3:20-cv-07094-JD

were calculated using mortality and interest assumptions consistent with § 417(e)[9]—the same assumptions Plaintiffs' expert used to calculate damages for the Retired SubClass:

| Existing JSA Factors | | | |
|---|---|---|---|
| Group Dkt. 153-2 ¶ 42 | 50% J&S | 75% J&S | 100% J&S |
| 1B | 0.88 | 0.82 | N/A |
| 1A | 0.92 | 0.885 | 0.85 |
| 2B | 0.90 | 0.85 | 0.80 |
| 2A | 0.90 | 0.85 | 0.80 |
| Other | 0.85 | 0.78 | N/A |

| Amended JSA Factors | | | |
|---|---|---|---|
| Group Dkt. 153-2 ¶ 42 | 50% J&S | 75% J&S | 100% J&S |
| 1B | 0.92 | 0.86 | N/A |
| 1A | 0.92 | 0.885 | 0.85 |
| 2B | 0.92 | 0.86 | 0.83 |
| 2A | 0.92 | 0.86 | 0.83 |
| Other | 0.92 | 0.86 | N/A |

For each participant group above, the JSA factors for the relevant Plan population were determined using the mortality framework underlying 26 U.S.C. § 417(e), together with the applicable § 417(e) interest-rate assumptions, with no discount for litigation risk. Declaration of Jennafer Tryck ("Tryck Decl.") ¶ 2. The amended factors will result in higher benefits for some class members, depending on the benefit form elected and the participant's individual circumstances. Settlement § III.B. For example, the factors for Group 1A were not increased because the existing factors already exceed, on average, those generated using § 417(e) assumptions. In all cases, however, class members will receive no less than under the prior factors. Settlement § III.C.

The value of this relief is substantial. Defendants estimate that the revised factors will provide approximately $35.6 million in relief, which reflects the present value of all projected increases in future pension benefits to the Pre-Retirement SubClass. Tryck Decl. ¶ 3. Although the aggregate value of this relief can be estimated using Plan demographic information, individual recoveries cannot presently be calculated because they necessarily depend on future events, including each participant's retirement date, accrued benefit, and election of an optional form of benefit. Even so, the estimated value of the prospective relief exceeds the total settlement value in

---

[9] The amended joint and survivor annuity conversion factors described in Section III(B) of the Settlement Agreement were developed using the mortality framework underlying 26 U.S.C. § 417(e), together with the applicable § 417(e) interest-rate assumptions, with no discount for litigation risk. Tryck Decl. ¶ 2. Rather than use the final blended/unisex § 417(e) mortality table, the Plan's actuaries used the more detailed female/male component tables underlying § 417(e) for participant-level calculations and then aggregated the results. *Id*.

14

MOT. FOR PRELIMINARY APPROVAL OF SETTLEMENT AND CERTIFICATION OF SETTLEMENT CLASS

many prior actuarial equivalence cases. *See, e.g., Berube v. Rockwell Auto,* (E.D. Wis. Mar. 8, 2024) ECF No. 90; *Franklin v. Duke Univ.*, 2026 WL 191142, at \*1 (M.D.N.C. Jan. 26, 2026); *McFadden v. Sprint*, (D. Kan. Aug. 21, 2024) ECF No. 46; *Herndon v. Huntington*, (E.D. Va. May 10, 2022) ECF No. 136.

In addition to implementing the amended JSA conversion factors, AT&T has agreed to review the assumptions underlying those factors at least once every ten years to ensure that the assumptions remain in compliance with ERISA. Settlement § III.D.

Continued litigation presents substantial, unique risks for the Pre-Retirement SubClass. In addition to the merits risks faced by all Class members, the Pre-Retirement SubClass faced risks associated with the fact that its members had not yet commenced benefits. During this litigation, for example, the original representative of the Pre-Retirement SubClass retired and began receiving pension benefits, requiring the substitution of new named plaintiffs for that group. *See* Dkt. 161. More broadly, the law governing the Pre-Retirement class remains unsettled. *See Lab. Corp. of Am. Holdings v. Davis*, 605 U.S. 327 (2025). These issues created litigation risks unique to the Pre-Retirement SubClass that would have persisted through trial and any appeal.

In light of those risks, obtaining prospective relief that implements Plaintiffs' Section 417(e) actuarial equivalence theory—without discounting the revised JSA conversion factors—represents an outstanding result for the Pre-Retirement SubClass. The Settlement therefore provides fair, reasonable, and adequate relief under Rule 23(e).

**D.  The Settlement Grants No Preferential Treatment to Any Class Members.**

Rule 23(e)(2)(D) directs courts to consider whether a proposed settlement treats class members equitably relative to one another. That requirement is satisfied here because the Settlement allocates relief based on objective differences among Class Members and does not provide preferential treatment to any segment of the Class.

For Retired SubClass members, Settlement payments will be calculated using a uniform formula that applies equally to all Retired SubClass members. *See* Decl. of Ian Altman ¶¶ 2–5. Each retiree's recovery is tied to the alleged underpayment, with appropriate adjustments to reflect differences in litigation risk, thereby ensuring that recoveries remain proportional to the value of

their claims. Settlement § III.A.1–2. The proposed Class Representatives will receive benefits under the same methodology as every other Retired SubClass member. Altman Decl. ¶¶ 2–5.

The Settlement likewise treats members of the Pre-Retirement SubClass equitably. All members of that SubClass will receive the same form of relief: amended JSA conversion factors calculated using the mortality and interest assumptions applied by Plaintiffs' actuarial expert. No Pre-Retirement SubClass member receives preferential treatment.

Nor does the Settlement improperly favor one SubClass over the other. Members of the Retired SubClass receive monetary relief because they have allegedly received JSA payments lower than they should have under Plaintiffs' actuarial-equivalence theory. Tryck Decl. ¶ 2. By contrast, members of the Pre-Retirement SubClass have not yet commenced benefits and therefore receive prospective relief in the form of amended JSA conversion factors that will govern their future benefit calculations. These differences reflect the differing circumstances of the two SubClasses and the differing forms of relief appropriate to address their respective injuries—not preferential treatment.

### E.    The Settlement Satisfies the Remaining Factors Set Forth in the Northern District's Procedural Guidance.

The Northern District's Procedural Guidance for Class Action Settlements ("Guidance") identifies certain factors that class settlement should address. To the extent those factors have not already been addressed in this memorandum, they are addressed below.

#### 1.    The Settlement Only Releases the Claims Asserted in the Operative Complaint and Claims Arising from the Same Factual Predicate.

The Guidance directs the parties to identify "any differences between the claims to be released and the claims in the operative complaint. . .and an explanation as to why the differences are appropriate in the instant case." Guidance § 1.2. The Settlement's release is narrowly tailored to satisfy that standard. It releases the claims asserted in the operative complaint, claims based on the same factual predicate as the claims in the operative complaint, claims barred by *res judicata* as a consequence of the Final Approval Order, claims relating to the implementation of the Settlement, including the calculation of Additional Benefits, claims relating to the Independent Fiduciary's review and approval of the Settlement, and claims relating to the Plan amendment implementing the revised JSA factors applicable to the Pre-Retirement SubClass. Settlement § I.GG.

The additional implementation-related releases are appropriately limited because they arise directly from the administration and execution of the Settlement itself. They do not expand the release to encompass other ERISA claims that do not share the same factual predicate as the claims asserted in the operative complaint. *Compare* Dkt. 197 *with* Settlement § I.GG. Accordingly, the Settlement comports with Ninth Circuit law. *Hesse v. Sprint Corp.*, 598 F.3d 581, 590 (9th Cir. 2010) ("A settlement agreement may preclude a party from bringing a related claim in the future even though the claim was not presented and might not have been presentable in the class action, but only where the released claim is based on the identical factual predicate as that underlying the claims in the settled class action") (quotation marks and citation omitted).

2. The Proposed Class and SubClass Definitions Closely Track Those Previously Litigated.

The Guidance requests an explanation of any differences between the proposed Settlement Class and the class definitions previously asserted in the litigation. Guidance § 1.1. Here, the proposed Settlement Class definition is similar to the Class alleged in the operative complaint. *Compare* Dkt. 197 *with* Settlement § I.K. The only differences are necessary to track the Class definition that Plaintiffs filed with the Court following the May 25, 2023 class-certification hearing in response to the Court's guidance regarding the proposed class structure. Dkt. 179.

The proposed SubClass definitions likewise track those set forth in Plaintiffs' Notice of proposed class/subclass definitions, which was filed after the class-certification hearing. *Id.* The proposed Settlement SubClass definitions make only two modifications. First, they use the date of Final Approval as the date dividing the Retired SubClass from the Pre-Retirement SubClass. Second, the Settlement excludes from the Retired SubClass the individuals whom the parties' experts agreed did not fall within the Retired SubClass (following the meet-and-confer process after the concurrent expert evidentiary proceeding). Dkts. 234-1, 234-2, and 234-4.

3. The Proposed Notice is Comprehensive, Clear and Reasonably Calculated to Reach the Class.

Rule 23(e)(1) requires that class members receive notice that is reasonably calculated, under the circumstances, to apprise them of the proposed Settlement and their rights. The Northern District's Guidance further specifies the information that should be included in the notice provided

17                                    Case No. 3:20-cv-07094-JD

to class members. Here, the proposed notice readily satisfies these requirements. *See supra* at III.D.

The notice program is also well designed to reach the Class. The postcard notice will be mailed directly to the addresses maintained by the Plan's recordkeeper for all identifiable Class members. *See* Yau Ex. 3. "It is beyond dispute that notice by first class mail ordinarily satisfies rule 23(c)(2)'s requirement that class members receive 'the best notice practicable under the circumstances.'" *Peters v. Nat'l R.R. Passenger Corp.*, 966 F.2d 1483, 1486 (D.C. Cir. 1992); *see also* Certification Notice, Manual Complex Lit. § 21.311 (4th ed.) (explaining that individual notice via mail is preferred when names and addresses are known).

The postcard format was selected because it is more likely to be read by Class members than a multi-page mailing, while still directing recipients to the comprehensive Settlement information online. The postcard notice, combined with a Settlement Website, toll-free telephone assistance, and email support, will provide multiple ways for Class members to get all relevant information, while minimizing costs. This cost-effective approach delivers the maximum benefit to the Class.

4. <u>The Plan of Allocation is Fair, Reasonable, and Rationally Based.</u>

The Northern District's Guidance requests that the parties explain why the proposed plan of allocation is fair and reasonable. Guidance § 1.5. The proposed allocation satisfies that standard.

A "plan of allocation need only have a reasonable, rational basis, particularly if recommended by experienced and competent counsel." *In re Nexus 6P Prods. Liab. Litig.*, 2019 WL 6622842, at *9 (N.D. Cal. Nov. 12, 2019) (citation omitted). Additionally, a pro rata distribution based on each class member's relative loss "has frequently been determined to be fair, adequate, and reasonable." *Hefler v. Wells Fargo & Co.*, 2018 WL 6619983, at *12 (N.D. Cal. Dec. 18, 2018).

Here, each member's share will be based on each Retired SubClass member's proportionate share of the alleged damages and the relative litigation risk associated with retiree's claim. Specifically, the allocation applies a 3:1 weighting in favor of SubClass members who retired after October 12, 2016. This weighting reflects the statute-of-limitations risk faced by retirees who retired more than four years prior to the lawsuit. Additionally, this weighting reflects the fact that Defendants' JSA conversion factors were alleged to have become more outdated over time. This allocation method, which is "based on the extent of class members' injuries or the strength of their

18

claims on the merits" meets the reasonableness standard. *In re Lithium Ion Batteries Antitrust Litig.*, 2020 WL 7264559, at *12 (N.D. Cal. Dec. 10, 2020), *aff'd*, 2022 WL 16959377 (9th Cir. Nov. 16, 2022) (approving settlement allocation "based on the extent of class members' injuries or the strength of their claims on the merits"); *Johnson v. Meriter Health Servs. Emp. Ret. Plan*, 2015 WL 13546111, at *3 (W.D. Wis. Jan. 5, 2015) (approving an ERISA settlement allocation that accounted for disproportionate impact of a statute of limitations defense on various class members' claims).

> 5. <u>Atticus and Fidelity were selected after a competitive bidding process and together they will administer the Settlement efficiently.</u>

The Northern District's Guidance requests an explanation of how the proposed Settlement Administrator was selected and why the anticipated costs are reasonable. Guidance § 2.1–2.2.

Plaintiffs' Counsel selected Atticus to serve as the settlement administrator and selected Plan's recordkeeper (Fidelity) to distribute the settlement proceeds. Plaintiffs' Counsel solicited seven competitive bids for settlement administration including class notice and distribution services. Yau Decl. ¶¶ 39–40. Atticus[10] submitted one of the lowest bids for distributing the class notice, setting up and maintaining a settlement website, operating the telephone and email support systems, and serving notices required under the Class Action Fairness Act of 2005 ("CAFA"). Yau Decl. ¶ 39. Atticus has extensive experience handling similar ERISA settlements and Cohen Milstein is currently using Atticus in one other class action. *Id*.

Plaintiffs' Counsel determined that the Plan's recordkeeper, Fidelity, should distribute the Settlement payments to the Retired SubClass because it is uniquely positioned to transmit payments to SubClass members via direct-deposit. Yau Decl. ¶ 40. This approach increases the likelihood that payments will be successfully delivered and reduces the likelihood of uncashed checks. In addition, the reasonableness of Fidelity's costs was confirmed through the competitive process because

---

[10] Atticus maintains Data Security and Information Privacy Policy which governs its handling of class member data. For example, Atticus utilizes secure, access-controlled systems, encrypted data transfer, and storage protocols, with multi-factor authentication requirements. Administrative safeguards include role-based access limitations, employee confidentiality obligations, documented standard operating procedures, and ongoing staff training and education. Office access is restricted and email includes a sensitivity screening to assess public, private, restricted, and/or confidential content. Data is retained only as long as necessary to fulfill the administration and legal requirements, after which it is securely destroyed in accordance with established retention policies. Atticus maintains professional liability and cybersecurity insurance.

19                                                           Case No. 3:20-cv-07094-JD

Plaintiffs' Counsel also obtained bids from the same seven settlement administrators for payment-distribution services. *Id*. at ¶¶ 39–40. Fidelity's estimated cost was comparable to, and in several instances lower than, the competing bids. *Id*.

The proposed settlement administration structure where Atticus administers the notice program and the Plan's current recordkeeper, Fidelity, distributes Settlement payments, is both efficient and cost-effective.

### 6. Plaintiffs' Counsel Will Seek Reasonable Attorneys' Fees and Expenses.

The Settlement Agreement provides that Plaintiffs' Counsel may apply for an award of reasonable attorneys' fees, litigation expenses, and Service Awards, subject to Court approval. Importantly, any amounts awarded will be paid separately by Defendants and will not reduce or offset the monetary or prospective relief provided to the Class. Thus, the Settlement's benefits to Class members are unaffected by the Court's determination of the appropriate fee award.

Plaintiffs' Counsel have devoted approximately 13,130 hours to this litigation, resulting in a combined lodestar of $13,333,375. Yau Decl. ¶ 42; Wasow Decl. ¶ 14; Stris Decl. ¶ 24. Plaintiffs' Counsel have also advanced $809,111 in litigation expenses. Yau Decl. ¶¶ 43–44; Wasow Decl. ¶ 16; Stris Decl. ¶ 27. Plaintiffs' Counsel anticipate seeking fees of no more than $34,190,889. This request represents 19% of the Settlement's total economic value of $184.1 million and a lodestar multiplier of 2.56.

At the preliminary approval stage, however, the Court need not determine the reasonableness of the requested fee award. *See Anderson-Butler v. Charming Charlie Inc*., 2015 WL 4599420, at *11 (E.D. Cal. July 29, 2015) (preliminarily approving settlement and declining to "evaluate the fee award at length" in "considering whether the settlement is adequate"). Plaintiffs will submit a separate motion fully addressing the basis for the requested attorneys' fees and litigation expenses.

### 7. The Named Plaintiffs Will Seek Reasonable Service Awards.

The Named Plaintiffs will each seek service awards of no more than $5,000. Each Named Plaintiff devoted substantial time and effort to the litigation over the course of nearly six years. They each communicated regularly with counsel, reviewed pleadings and significant case filings, responded to written discovery, collected and produced documents, prepared for and sat for

20

depositions, and remained actively involved in the prosecution and settlement of the case. *See* Dougherty Decl. ¶¶ 5–8; Fisher Decl. ¶¶ 5–8; Fryer Decl. ¶¶ 5–8; Gilchrist Decl. ¶¶ 5–8; Griffin Decl. ¶¶ 5–8; Kelly Decl. ¶¶ 5–8; Koval Decl. ¶¶ 5–8; Maldonado-Valtierra Decl. ¶¶ 5–8; Rhodes Decl. ¶¶ 5–8; Scott Decl. ¶¶ 5–8; Walshon Decl. ¶¶ 5–8.

Service Awards of $5,000 are routinely approved in this District and throughout the Ninth Circuit in recognition of the time and effort expended by class representatives when prosecuting complex litigation. *See, e.g., In re Facebook Biometric Info.*, 522 F. Supp. 3d at 633 (quoting *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 958 (9th Cir. 2009) (approving $5,000 incentive awards for each of nine class representatives as reasonable where litigation was "complicated" and "took up quite a bit of the class representatives' time"). The proposed Service Awards are modest and subject to independent Court approval. Plaintiffs will address the reasonableness of the requested service awards in their forthcoming Motion for Attorneys' Fees, Costs, and Service Awards.

8.   No Portion of the Class Recovery Will Revert to Defendants

The Northern District's Procedural Guidance requests that the parties identify whether any portion of the recovery designated for the Class may revert to a defendant. Guidance § 1.7. Consistent with Ninth Circuit precedent disfavoring reversionary settlements, no portion of the relief obtained for the Class will revert to Defendants. All relief negotiated for the benefit of the Class will remain dedicated to the Class, and no Defendant may recover any portion of the Settlement consideration allocated for Class relief.

V.   **CERTIFICATION OF THE CLASS AND SUBCLASSES IS APPROPRIATE.**

The second prerequisite for directing notice of the settlement to Class members is a determination that the class is likely to meet the requirements for certification for settlement purposes. Fed. R. Civ. P. 23(e)(1)(B)(ii). Certification requires that all four elements of Rule 23(a) and at least one prong under Rule 23(b) are satisfied.

When evaluating the certifiability of a settlement class, "[t]he focus is 'on whether a proposed class has sufficient unity so that absent members can fairly be bound by decisions of class representatives.'" *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 558 (9th Cir. 2019) (en

banc) (quoting *Amchem Prods. v. Windsor*, 521 U.S. 591, 621 (1997)). "[T]he aspects of Rule 23(a) and (b) that are important to certifying a settlement class are 'those designed to protect absent[] [class members] by blocking unwarranted or overbroad class definitions.'" *Id.* at 558 (quoting *Amchem*, 521 U.S. at 620).

These considerations are satisfied. The parties fully litigated class certification over the course of several years, including extensive briefing, expert discovery, supplemental submissions, and a concurrent expert evidentiary proceeding before the Court. The proposed Settlement Class closely tracks the class definition previously advanced by Plaintiffs during those proceedings and differs only in limited respects necessary to implement the Settlement. *See supra* at IV.E.2.

Moreover, the proposed Settlement Class appropriately encompasses a "cohesive group of individuals [who] suffered the same harm in the same way" because of AT&T's alleged conduct and does not extend beyond that limit. *See Hyundai & Kia*, 926 F.3d at 559.

**A. The Proposed Class and SubClasses Satisfy the Requirements of Rule 23(a).**

      i.   <u>The Class and SubClass members are too numerous to be joined in one action.</u>

The first Rule 23(a) requirement is that the proposed class be so numerous that joinder of all members is impracticable. *See* Fed. R. Civ. P. 23(a)(1). Classes of over 40 members are presumed to meet this requirement. *Hernandez v. Cty. of Monterey*, 305 F.R.D. 132, 153 (N.D. Cal. 2015).

Here, the parties estimate that the Class consists of nearly 170,000 members. Yau Decl. ¶ 47. The Retired SubClass includes over 38,500 individuals, while the Pre-Retirement SubClass includes approximately 129,055 individuals. *Id*. Numerosity is plainly satisfied for the Class and SubClasses.

      ii.   <u>The action involves common questions of law or fact.</u>

Under Rule 23(a)(2), there must be "questions of law or fact common to the class," meaning the class's claims "must depend upon a common contention" such that "determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 345, 350 (2011). This case poses an overarching common question: Did AT&T's use of JSA factors that are over 40 years old violate ERISA's actuarial equivalence requirement? Within that overarching question are several questions common to all Class and SubClass members, including whether AT&T's JSA factors are entitled to

22

deference, and whether the JSA factors that AT&T established decades ago comport with factors based on current actuarial assumptions or are systematically skewed against married class members because the existing JSA factors fail to account for material increases in life expectancy. Determining whether Defendants' use of JSA factors that applied to the Class and SubClasses represents a classic common question that satisfies Rule 23(a)(2). *See J.L. v. Cissna*, 2019 WL 415579, at *8 (N.D. Cal. Feb. 1, 2019).

Here, commonality is satisfied for the Class and each of the SubClasses because the "circumstances of each particular class [and subclass] member. . . retain a common core of factual or legal issues with the rest of the class." *See Evon v. Law Offices of Sidney Mickell*, 688 F.3d 1015, 1029 (9th Cir. 2012) (quoting *Parra v. Bashas', Inc.*, 536 F.3d 975, 978–79 (9th Cir. 2008)).

iii.  <u>Plaintiffs' claims are typical of the class.</u>

Rule 23(a)(3) requires that "the claims or defenses of the representative parties [be] typical of the claims or defenses of the class." "[T]he typicality requirement is 'permissive' and requires only that the representative's claims are 'reasonably co-extensive with those of absent class members; they need not be substantially identical.'" *Rodriguez v. Hayes*, 591 F.3d 1105, 1124 (9th Cir. 2010) (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998)).

Here, Plaintiffs' claims are typical of the Class and SubClass members they seek to represent. First, the claims of the Retired SubClass representatives "arise from the same course of events" as those of the Retired Class. *Rodriguez*, 591 F.3d at 1124 (citations omitted). All are currently receiving pensions in the form of a JSA that was calculated using outdated JSA factors below what they would have received had 417(e) assumptions been used to calculate their JSA conversion factor. In addition, all representatives make the same "legal arguments to prove the defendants' liability" as the Retired SubClass. *Id*. Each alleges that the JSA amounts they are receiving are less than ERISA's actuarial equivalence requirements allow and that the improper JSA factors applied caused Retired SubClass members to forfeit benefits.

Plaintiff Fryer's claims are similarly typical of the Pre-Retirement SubClass's claims. Like all other members of the Pre-Retirement SubClass, Ms. Fryer has not yet begun receiving JSA benefits but would be subject to outdated JSA factors upon retirement. Fryer Decl. ¶ 3.

Ultimately, the claims of the Retired SubClass, the Pre-Retirement SubClass, and the Class are all based on the same factual circumstances and legal theories, thereby satisfying typicality.

iv.     Plaintiffs and their counsel have, and will continue to, fairly and adequately protect the interests of the class.

The final Rule 23(a) requirement demands that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This adequacy requirement involves two questions: "(a) do the named plaintiffs and their counsel have any conflicts of interest with other class members, and (b) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Sali v. Corona Reg'l Med. Ctr.*, 909 F.3d 996, 1007 (9th Cir. 2018) (quoting *In re Mego Fin. Corp. Secs. Litig.*, 213 F.3d 454, 462 (9th Cir. 2000)). Here, neither Plaintiffs nor their counsel have any conflicts of interest with absent class members. To the contrary, their interests are aligned. *See* Class Cert. Memo. Dkt. 119 at 14–17.

Plaintiffs and Plaintiffs' Counsel have demonstrated their commitment to the Class over nearly six years of litigation. Plaintiffs' Counsel has spent 13,130 hours prosecuting the case. Yau Decl. ¶ 42; Wasow Decl. ¶ 14; Stris Decl. ¶ 24. The case has been hard-fought, with complete fact and expert discovery and extensive motion practice. *See supra* at II. Plaintiffs' Counsel also spent considerable time negotiating this settlement agreement over a period of years. *Id.* They are well-versed in complex class litigation and devoted substantial time and expertise to the benefit of the Class. *Supra* at IV.A. There is no reason to doubt the adequacy of this representation. For the same reasons, Plaintiffs' Counsel should be appointed Class Counsel under Fed. R. Civ. P. 23(g). *Id.*

**B.  The Settlement Class Meets the Requirements of Rule 23(b)(1) and (b)(2).**

"In addition to meeting the conditions imposed by Rule 23(a), the parties seeking class certification must also show that the action is maintainable under Fed. R. Civ. P. 23(b)(1), (2) or (3)." *Hanlon*, 150 F.3d at 1022. Here, the proposed settlement class is maintainable under Rule 23(b)(1), as "prosecuting claims separately risks 'inconsistent or varying adjudications' that could impose 'incompatible standards of conduct.'" *Rollins v. Dignity Health*, 2021 WL 8154953, at *5 (N.D. Cal. Oct. 19, 2021) (quoting Rule 23(b)(1)). "Most ERISA class action cases are certified under Rule 23(b)(1)." *Kanawi v. Bechtel Corp.*, 254 F.R.D. 102, 111 (N.D. Cal. 2008). Indeed,

"ERISA fiduciary litigation presents a paradigmatic example of a (b)(1) class." *Id*. at 112 (internal brackets and ellipses omitted).

Here, if the Class and SubClasses are not certified, tens of thousands of potential plaintiffs could individually file suit challenging the assumptions Defendants use to calculate their JSA benefits in the past and in the future. These separate actions "would create a risk of 'inconsistent and varying' adjudications." This risk of multiple, inconsistent orders if class members were to proceed individually supports certification of the Class and SubClasses under 23(b)(1)(A). *See, e.g.*, *Norris v. Mazzola*, 2017 WL 6493091, at *5 (N.D. Cal. Dec. 19, 2017) (outlining numerous different and conflicting orders ERISA plan administrator might receive if multiple suits were permitted). Thus, the Class and SubClasses are certifiable under Rule 23(b)(1).

The Class is also certifiable under Rule 23(b)(2) because Plaintiffs challenge "a pattern or practice that is generally applicable to the class as a whole.'" *Hayes*, 591 F.3d at 1125. Furthermore, because Plaintiffs seek the same declaratory and injunctive relief applicable to the whole Class[11], Rule 23(b)(2) certification is appropriate. *See B.K. by next friend Tinsley v. Snyder*, 922 F.3d 957, 971–72 (9th Cir. 2019) (affirming certification of (b)(2) class seeking injunction).

## VI.    CONCLUSION

The Court should grant preliminary approval and certify the Class and SubClasses.

Dated:  July 9, 2026                    Respectfully submitted,

                                        */s/ Nina Wasow*
                                        Todd Jackson (Cal. Bar No. 202598)
                                        Nina Wasow (Cal. Bar No. 242047)
                                        FEINBERG, JACKSON, WORTHMAN & WASOW, LLP
                                        2030 Addison Street, Suite 500
                                        Berkeley, CA 94704
                                        Telephone: (510) 269-7998
                                        Fax: (510) 269-7994
                                        todd@feinbergjackson.com
                                        nina@feinbergjackson.com

---

[11] Plaintiffs seek a declaration that the Plan's JSA factors violate ERISA §§ 204(c)(3), 205, 203(a), 29 U.S.C. §§ 1054(c)(3), 205, 203(a) and seek an injunction requiring Defendants to reform the Plan to provide JSA factors that provide benefits that are actuarially equivalent to SLAs. Dkt. 197 at Prayer.

Michelle C. Yau (admitted *pro hac vice*)
Kai Richter (admitted *pro hac vice*)
Daniel J. Sutter (admitted *pro hac vice*)
Caroline Bressman (*Pro Hac Vice*)
COHEN MILSTEIN SELLERS & TOLL PLLC
1100 New York Ave. NW ● Suite 800
Washington, DC 20005
Telephone: (202) 408-4600
Fax: (202) 408-4699
myau@cohenmilstein.com
krichter@cohenmilstein.com
dsutter@cohenmilstein.com
cbressman@cohenmilstein.com

Rachana A. Pathak (Cal. Bar No. 218521)
STRIS & MAHER LLP
777 S. Figueroa St. ● Suite 3850
Los Angeles, CA 90017
Telephone: (213) 995-6800
Fax: (213) 261-0299
rpathak@stris.com

Shaun P. Martin (Cal. Bar No. 158480)
5998 Alcala Park ● Warren Hall
San Diego, CA 92110
Telephone: (619) 260-2347
Fax: (619) 260-7933
smartin@sandiego.edu

*Attorneys for Plaintiffs*

MOT. FOR PRELIMINARY APPROVAL OF SETTLEMENT AND CERTIFICATION OF SETTLEMENT CLASS